# Holmes's Appeal.

1. In negotiating for the sale of a farm, on the inquiry of the vendee who declined to purchase unless the neighborhood was not sickly, the vendor assured him that it was free from sickness, the vendee then entered into articles for the purchase. The neighborhood was subject to fever and ague. It was *held* the agreement could not be enforced.

2. *It seems*, that such agreement would not be enforced if the neighborhood was unhealthy and the vendee was ignorant of it, even if there had been no misrepresentation by the vendor.

October 15th 1874. Before AGNEW, C. J., SHARSWOOD and MERCUR, JJ.

Appeal from the Court of Common Pleas of *Allegheny county* : In Equity. No. 83, to October and November Term 1874.

The proceeding in this case commenced November 7th by a bill filed by William Holmes against John A. Heckler; it set out :—

1. That on the 27th of September 1871, the plaintiff and defendant entered into an agreement for the exchange of lands; those of the defendant being in the Nineteenth ward of the city of Pittsburg and of the estimated value of $13,500, the land of the plaintiff was a tract in Allen county, Indiana, containing 240 acres, valued at $12,000, the plaintiff to pay to the defendant in addition, the sum of $1500.

2, 3. That after an examination of the Indiana land and its title the defendant and his wife said they were well satisfied with it.

4. That the plaintiff, on the 27th of October 1871, tendered to the defendant a deed for the Indiana land and the sum of $1500, and demanded from defendant a deed to himself for the Pittsburg land.

5. That the defendant offered to accept the money and the deed tendered by the plaintiff, but refused to deliver to the plaintiff a sufficient deed for the Pittsburg land.

6. Averred that the plaintiff had always been ready and willing to fulfil his obligations, &c.

The prayer was that the defendant might be compelled to perform his contract specifically; and for general relief.

The defendant by his answer admitted the allegations of the first paragraph of the bill.

He denied that he and his wife had said that they were satisfied with the Indiana land and its title.

He admitted the tender of the deed and money by the plaintiff, but averred that the tender was accompanied with a demand as the condition of the delivery, that the defendant, should deliver to the plaintiff a deed for the land executed by the defendant and his wife; that defendant was unable to comply with the demand because his wife refused to sign such deed on account of her dis-

satisfaction with said agreement 'and of reports she had heard of the unhealthiness of plaintiff's land. He at the same time tendered to the plaintiff a deed for his land, executed by himself, but not by his wife, whom he could not prevail on to execute it; the plaintiff refused to accept it, and after that the defendant considered the contract rescinded.

He averred that the plaintiff's land which was to be conveyed to him clear of encumbrances, was encumbered by a lease, &c. Defendant further averred, that at the time the agreement for the exchange of lands was made, the plaintiff, for the purpose of inducing the defendant to enter into the agreement, represented that the Indiana land was free from sickness, whereas the defendant has since ascertained that fever and ague prevail there, and had he known this before signing the agreement, he would not have signed it; his design in desiring to purchase the land being to remove his family there and make it a permanent home for himself and family. He averred that the plaintiff misrepresented the character of the land in other particulars, which need not be specified.

The plaintiff filed a replication, and Jonas R. Butterfield, Esq., was apppointed examiner and master.

The question on which the case was decided in the Supreme Court related to the healthiness of the neighborhood in which the Indiana farm was situate.

The plaintiff testified before the examiner that the locality was not sickly; fever and ague did not prevail there; the location was as healthy as any other part of the state.

He further testified: "Neither my wife nor myself ever had fever and ague. The fever and ague did not prevail there any more than in any other part of the state. The city of Fort Wayne is a healthier city than either Pittsburg or Allegheny."

On cross-examination he said: "I have known fever and ague in that neighborhood. I know there have been such things; I have had it in my own family, but very little, on the farm near the Heckler farm."

Joshua Holmes, a son of plaintiff, testified that he had lived near the farm; the general health in the neighborhood was good; it was a healthy farm and locality.

On cross-examination he said: "I have had the fever and ague a little, I had fever and ague on my father's place near the Heckler farm. I have known other persons having the fever and ague in that neighborhood. I don't remember of any person having had it on the Heckler farm; I never heard of anybody having had it there."

The defendant testified; that during the negotiation for the farm his wife said. "If there was any fever and ague there she would not go out; Holmes said there was no fever and ague there at all.

We rode out to the farm; my wife told him it must be sickly; he said there was no fever and ague at all there. * * * Mr. Holmes and me were talking about getting possession before the 1st of April; * * * plaintiff came next day; my wife said she would sooner die than go on such a sickly place, where there were fever and ague." * * * When defendant requested his wife to execute the deed; she said she would not on account of the fever and ague."

William Heckler, a son of defendant testified : " I told my folks when I returned (from ·Indiana) that I didn't like the fever and ague being there.  I told them I asked a man if the climate was clear of sickness; he told me it was not ; I told this to my father on my return ; * * * my mother told me as a reason for not signing the deed she had been living out west long enough and did not want to get any more trouble about fever and ague."

Anna Heckler, wife of plaintiff, testified : that when plaintiff and. her husband were speaking about the sale of the property, she told plaintiff that if it was sickly and had fever and ague they would not go on to it; if it was healthy they would take it ; plaintiff said there was no fever and ague there, it was a healthy place.  When she saw the farm she told plaintiff she thought there was fever and ague there; he denied that there was ; she said that the reason she would not sign the deed, was that the farm in Indiana was in a sickly neighborhood; otherwise she was satisfied with the farm.

A number of witnesses gave evidence tending to prove that the neighborhood in which the Indiana farm was located was sickly.

The master, in concluding his report, said :

" Lastly, defendant claims that equity should not interpose in relief of the plaintiff, because, ' the false allegations of plaintiff in regard to fever and ague, as well as to other matters which defendant deemed material, should of themselves prevent a decree in favor of plaintiff.'

" The evidence of the existence of ague and fever on the farm of the plaintiff is so meagre and unsatisfactory, as to deprive it, in the opinion of the master, of any value as a defence to a specific performance of the contract.  No medical testimony was offered, and no lay testimony sufficiently intelligent or coherent to enable any one to form an opinion as to what diseases were prevalent in Indiana.  It is not claimed that defendant placed confidence in the plaintiff as a man of known skill and judgment as to the nature of diseases.  His statement as to ague and fever was a mere matter of opinion, open to the defendant for examination and inquiry through proper channels of information. * * * Outside of this, however, there was no sufficient evidence of the existence of ague and fever. * * *

" From a consideration of all the facts and circumstances of this case, and the law in the authorities cited bearing on the same, it appears to the master that the plaintiff is entitled a performance

[Holmes's Appeal.]

of the contract with exception in favor of defendant of the wife's dower interest, allowing compensation to defendant for the crop claimed by the tenant under the lease."

The defendant filed exceptions to the report of the master.

After argument the court sustained the exceptions and dismissed the bill with costs.

The plaintiff appealed to the Supreme Court.

He assigned for error the decree dismissing his bill.

*Bayne & Magee*, for appellant.

*T. C. Lazear*, for appellee.

Judgment was entered in the Supreme Court, October 26th 1874.

PER CURIAM.—When the treaty between the parties for the exchange was in progress, both Heckler and his wife were anxious to know whether ague and fever existed in the vicinity of the Indiana farm, and inquired of Holmes as to the fact. He represented that none existed, and that the health of that locality was good in this respect.

The facts show clearly that this was a misrepresentation on his part. It is evident Heckler and his wife made the absence of that disease a material ground for accepting the offer of Holmes. Now clearly, equity, under such circumstances, will not compel a man thus misled to perform specifically a contract of exchange at the risk of his health and that of his family. Even had there been no misrepresentation on Holmes' part, it would be doubtful whether a chancellor would compel specific performance against one who was ignorant of the fact; but when this conduct of the plaintiff is added, there can be no hesitation. The other question does not necessarily arise under this view of the case. Decree affirmed with costs, to be paid by the appellant, and the appeal dismissed.