152        529
31 SC ¹ 93

# Friend, Appellant, *v.* Lamb.

[Marked to be reported.]

*Equity—Specific performance—Discretion of court.*

A decree for specific performance is not a matter of course, but rests in the sound discretion of the chancellor. Even when the agreement is perfectly good, the price adequate, and no blame attaches to the purchase, if the transaction be inequitable and unjust in itself or rendered so by matter subsequently occurring, specific performance may be denied, and the parties turned over to their remedy in damages.

*Improvident and oppressive contract by married woman.*

A married woman entered into a contract for the purchase of a tract of land for the price of $50,000. Five thousand dollars were to be paid in cash, and the remainder of the purchase money was to be secured by a mortgage for $45,000 in annual payments of $5,000 and $7,000 respectively, with interest on all, and reaching over a period of seven years. The first two payments were to be secured by a mortgage for $12,000 on the purchaser's other real estate. There was no evidence as to where the money for the other payments was to come from, nor did it appear that the purchaser had any of the essential qualifications either in capital or experience to conduct such an enterprise to a successful conclusion. *Held,* that a decree for specific performance should be refused.

*Evidence—Misrepresentations—Specific performance.*

Defendant in the above case testified that before the contract was made it was represented to her by the plaintiff or his agent that the property was underlaid with coal. Defendant's testimony was corroborated by another witness, but was denied by plaintiff's agent. As a matter of fact the coal had been almost entirely removed from the land. It was also a

controverted question between the parties as to when the possession of the property was to be delivered to defendant. *Held,* that the condition of the proof on these questions was an additional reason for refusing a decree of specific performance.

*Married women's contracts.*

In determining whether a decree for specific performance shall be made against a married woman, the court will consider her state and condition as being a married woman, even if the contract in question was within her power to make.

Argued Nov. 8, 1892. Appeal, No. 277, Oct. T., 1892, by plaintiff, Harry T. Friend, from decree of C. P. No. 1, Allegheny County, March Term, 1891, No. 991, in favor of defendant, Martha E. Lamb et al. Before PAXSON, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity for specific performance.

The bill averred that plaintiff was owner of a certain piece of land in Braddock township, Allegheny county, Pa., containing seventy acres, subject to two leases, expiring April 1, 1891, to James Hamilton, a stone lease at fifteen cents a perch on all stone taken out; and to Samuel McKelvey, a farm lease at a rental of $250 per year. That by an article of agreement dated Sept. 15, 1890, plaintiff agreed to sell this property, subject to the two leases, for the price of $50,000, payable as follows: One thousand dollars on signing agreement, $4,000 on Nov. 1, 1890, $45,000, the balance, to be secured by bond and mortgage, payable $5,000 Nov. 1, 1891; $7,000 Nov. 1, 1892; $7,000 Nov. 1, 1893; $7,000 Nov. 1, 1894; $7,000 Nov. 1, 1895; $7,000 Nov. 1, 1896; $5,000 Nov. 1, 1897, interest payable semi-annually. The first two payments of $5,000 and $7,000 were to be secured by a collateral mortgage on other property of Martha E. Lamb. That, on Nov. 1, 1890, plaintiff, being the owner of said property by a good and marketable title, made a tender of a deed of conveyance in fee simple, duly signed by himself and wife, to Martha E. Lamb, and offered the bonds and mortgages to Martha E. Lamb and Benj. F. Lamb to be executed by them. That they refused the tender and refused to pay the purchase money and execute the bonds and mortgages. The bill prayed that the defendants be ordered to carry out the agreement, and general relief.

The answer of Martha E. Lamb alleged that it was verbally understood and agreed, at the time of signing the agreement, that the said land was not to be taken subject to the leases referred to in the bill. It also averred that, at the time of making the agreement, plaintiff and his agents represented that the tract was underlaid with coal, and defendant relying on this representation made the agreement; that this representation was false, as the coal had been almost entirely removed; that defendant had refused to accept the deed because of these facts.

The facts appear by the opinion of the Supreme Court.

The case was referred to J. M. Shields, Esq., as master, who recommended a decree in accordance with the prayers of the bill. Exceptions to the master's report were sustained by the court, and a decree entered dismissing the bill, in an opinion by STOWE, P. J.

*Error assigned*, inter alia, was decree, not quoting it.

*Edwin W. Smith, Knox & Reed* with him, for appellant.— Mrs. Lamb examined the land, and could not have been deceived as to the representations as to the coal. Under the circumstances of the case, a decree should not be entered in favor of defendant on this ground: Pomeroy, Eq. § 892; Watts v. Cummins, 59 Pa. 91; Phipps v. Buckman, 30 Pa. 401; Clark v. Everhart, 63 Pa. 347.

Mrs. Lamb had power to make the contract: Koechling v. Henkel, 144 Pa. 219; Real Estate Co. v. Roop, 132 Pa. 501.

There is one question that the learned judge below thought was in this case, although not raised by the answer nor spoken of by a witness nor suggested by the counsel for defendants nor discussed by the master—the improvidence of the contract. After weeks of consideration and investigation, assisted by her husband and Collins, Mrs. Lamb signs the contract and her husband signs it too. There is not a breath of testimony that the property was not worth what was to be paid for it. The court, however, thinks because a collateral mortgage was to be given to secure the first two deferred payments that the contract was improvident.

*James S. Young, S. U. Trent* with him, for appellee.—Specific performance is not a matter of course, but rests in the

sound discretion of the chancellor ; it may be refused notwith-
standing a contract obligation, if there be circumstances render-
ing it inequitable : Freetly v. Bernhart, 51 Pa. 279; Weise's
Ap., 72 Pa. 351 ; Elbert v. O'Neil, 102 Pa. 305 ; Rennyson v.
Rozell, 106 Pa. 407 ; 1 Pomeroy, Eq. § 400.

Mrs. Lamb testifies as to the misrepresentations and is cor-
roborated by Collins, a disinterested witness, and is alone con-
tradicted by Miller, the interested agent for plaintiff, and even
he admits there was a conversation about the coal.    Consider-
ing then the harshness and inequality of the bargain and add-
ing to it the misrepresentations about the coal, how could a
chancellor do otherwise than refuse to enforce the contract;
Holmes's Ap., 77 Pa. 50.

The contract was void because Mrs. Lamb was a married
woman : Real Estate Investment Co. v. Roop, 132 Pa. 496 ;
Bauck v. Swan, 146 Pa. 444 ; Heugh v. Jones, 32 Pa. 432 ;
Guyer v. Harrison, 103 Pa. 489 ; Lippincott v. Leeds, 77 Pa.
422.

It is difficult to conceive of a more improvident contract—
$5,000 cash and $45,000 of a debt incurred, and her separate
estate involved to the amount of $12,000 by the collateral
mortgage.


OPINION BY MR. JUSTICE GREEN, January 3, 1893 :

We are of opinion that the learned court below, rather than
the master, adjudged correctly the facts and law of the present
contention.    It is not a case of mere legal right and is not de-
pendent solely upon principles which control the determination
of causes of that character.    The proceeding is by bill in equity,
and the relief sought is the specific performance of a contract
for the sale of a tract of land for the price of fifty thousand
dollars.    The defendant against whom the contract is proposed
to be enforced is a married woman, and as only five thousand
dollars of the purchase money were to be paid in cash, the sale
is to be regarded as one made almost entirely upon credit, and
the credit is to be secured by a mortgage for the sum of forty-
five thousand dollars in annual payments of five and seven
thousand dollars respectively, with interest on all, and reaching
over a period of seven years.    For a man to encumber himself
with such a contract, would be, in all ordinary circumstances,

a rash, improvident and extremely hazardous undertaking. Nothing but a rare combination of fortunate events to occur in the very near future, capable of being foreseen by an extremely sagacious and experienced operator in speculative transactions, would justify such a contract in the ordinary judgment of men. But with a woman, especially a married woman, unless possessed of ample cash capital to meet her maturing payments, and a special skill and experience in conducting such affairs, an engagement of this character would seem to be almost entirely destructive of the least prospect of success, and improvident and oppressive to the last degree. There is no evidence in this case that Mrs. Lamb possessed any of the essential qualifications either in capital or experience to conduct such an enterprise to a successful conclusion. Where the money was to come from to meet the annual payments does not appear, and the consequences of " the usual sci. fa. clause" are well enough known to indicate what would become of the property if the payments were not promptly met. We deem the contract in this case as highly improvident and rash, and most likely to result in great disaster even before the maturity of the payments and therefore oppressive in its character. In its merely legal aspects these considerations could not be regarded and they would not constitute a defence to an action to recover damages for its breach. But in equity the rule is very different where the application is for a specific performance of the contract. It was thus expressed by this court in Freetly v. Barnhart, 51 Pa. 279, where we said that " there. is nothing better settled than that a decree for specific performance is not a matter of course, but rests in the sound discretion of a chancellor. It may be refused, therefore, notwithstanding a contract obligation, if there be circumstances rendering it inequitable, and then the party seeking it is left to his action for damages. I know of no case in which specific performance is ever decreed unless it appears to accord with good conscience that it should be so decreed, be the contract ever so specific in it terms."

To the same effect are Weise's Ap., 72 Pa. 351; Elbert v. O'Neil, 102 Pa. 302, and Rennyson v. Rozell, 106 Pa. 407. In the last of these cases our late Brother CLARK said : " It is not sufficient to call forth equitable interposition of the court that the legal obligation under the contract may be perfect; if in-

justice would result from a decree for specific relief the parties must be remitted to their remedies at law. Even when the agreement is perfectly good, the price adequate and no blame attaches to the purchase, if the transaction be inequitable and unjust in itself, or rendered so by matters subsequently occurring, specific performance may be denied and the parties turned over to their remedy in damages: Henderson v. Hays, 2 Watts, 148 ; Remington v. Irwin, 14 Pa. 143 ; Freetly v. Barnhart, 51 Pa. 279."

An unconscionable price, a clouded title, any circumstances of overreaching, misrepresentation, suppression of the truth, suggestion of the false, fraud of any kind, breach of confidential relation and many other similar causes will induce the courts to refuse specific performance. The cases and illustrations in the books are very numerous and of great variety.

In the present case, besides the improvident and oppressive character of the contract and the coverture of the purchaser, it was alleged as a defence that it was represented to Mrs. Lamb, before the contract was made by the plaintiff or his agent, that the property was underlaid with coal. The defendant, Mrs. Lamb, testified that Mr. Miller, who conducted the negotiation for the plaintiff, said " that there was also brick shale and clay suitable for making brick, and that it was underlaid with coal. I asked the question when he spoke about the brick shale and clay where could I get the coal and he said why there is plenty of it all underneath this property." And again : " He said the property, the whole property, was underlaid with coal—I do not know whether he stated the thickness of the vein or not. Q. What did Mr. Miller say of the coal as to its value, prior to signing the agreement? A. Mr. Miller said the land was underlaid with coal; he said it would be more valuable on that account." On cross-examination she said she saw a coal pit on the farm, noticed the old slack piles, did not go into the coal pit. " When I saw the coal pit I presumed that some coal had been taken out at some time before. I did not at any time make any inquiry as to the quantity of coal taken out. Nothing else was said to me about this coal but what Mr. Miller told me at the first meeting in the office."

Harry Collins, a witness for the defendant, testified that he was present at an interview between Miller and Mrs. Lamb at

Somer's office in which " Miller told Mrs. Lamb that the property was underlaid with coal. He also said that the coal that was underneath the property, together with the stone, would make that as valuable property as there was anywhere in the state."

It was proved by McKelvy, a witness for the plaintiff, that the coal had been taken out years before by tenants of a former owner and that there was no coal on the premises left, but about five or six acres which were not included in the lease to the lessees of the coal.

The master in his treatment of this testimony laid stress upon the fact that Miller, the plaintiff's agent, denied that he had ever represented that there was coal on the property, and held that if the representations were made, Mrs. Lamb did not rely on them, but made an examination for herself, and he expresses some doubt as to the truth of the testimony of the defendant and her witness. We do not perceive any sufficient reason for discrediting the positive testimony of Mrs. Lamb and Collins on this subject, and as the actual presence of coal underlying all, or any considerable part of the land, would naturally be a fact of the gravest importance in considering the value of the property, we feel constrained to say that even a condition of doubt upon this most serious subject would impel a chancellor to refuse specific performance. This was the conviction of the learned court below and it is also ours. We cannot think it would be equitable to force upon any purchaser a title to seventy acres of land, at a price of fifty thousand dollars, when the supposed presence of a large body of coal which had been in fact removed may have been the chief inducing cause of the contract. Certainly the evidence should be most convincing that the purchaser knew that the coal had been removed, and made the contract without regard to its presence or absence. Instead of testimony to that effect we have only denials of the fact that the representations were made, and these denials are a practical concession of their importance, if made. The fact that they were made is attested by two witnesses and denied by one. In such a state of the testimony it may well be doubted that even a jury in an action at law for damages for breach of the contract would award a verdict in favor of the seller, but, assuredly, a chancellor would

decline to enforce such a contract, in such a condition of the testimony, upon an unwilling purchaser. In Holmes's Ap., 77 Pa. 50, we said : "Even if there had been no misrepresentations on Holmes's part it would be doubtful whether a chancellor would compel specific performance against one who is ignorant of the fact." There was no testimony to the effect that Mrs. Lamb was informed that the coal had been removed, and the testimony of herself and Collins was, that she was assured by the agent of her vendor that it was actually there and in large quantity.

There was also a controverted question of fact as to the time when Mrs. Lamb was to have possession of the premises, she and her witness Collins testifying that Miller agreed that she should have it immediately, and Miller denying such agreement. Mrs. Lamb testified that she declined to sign the contract with the provision in it regarding the leases, and that thereupon Miller promised that she should have immediate possession, and upon the faith of that promise she signed the paper. The preponderance of the testimony on this subject is with the defendant and, as an unsuccessful attempt to get possession was made, another element of doubt is introduced into the case, causing additional hesitation as to the specific performance of the contract.

One of the elements of the contract was that Mrs. Lamb was to give a mortgage on other property owned by her for twelve thousand dollars to secure the first two payments. The circumstance that such a security was required, is additional proof that even the plaintiff did not regard the land itself as of sufficient value to assure the payment of the purchase money, and is another reason why a chancellor would regard the contract as oppressive and burdensome.

Treating the whole case as one between parties sui juris we do not regard it as one in which a chancellor should decree specific performance. We do not discuss or decide the question whether the contract was within the legal competency of Mrs. Lamb, because it is not necessary, but we do think it proper to give some consideration to her state and condition as being a married woman, in determining whether or not a decree for specific performance should be made against her. The very recent emancipation of married women from the disabilities for-

merly incident to their relation, does not remove them from consideration by the courts, when questions of improvidence, hardship and oppression, in contracts made by them, require judicial attention. In so far as these circumstances are recognized as occasions for intervention, they will be availed of, in favor of married women as well as of all other persons, with the added consideration of their less protected and, comparatively speaking, more helpless condition. We are of the opinion that the case was correctly decided by the learned court below.

Decree affirmed and bill dismissed at the cost of the plaintiff.