F. E. LUTTER, Appellee, v. E. E. OGBURN, Appellant, et al., Appellees.

**SPECIFIC PERFORMANCE:** **Mistake of One Party Only.** A written contract for the sale of a specified numbered residence on a public street embraces the entire lot and all improvements thereon, and a mistake *solely on the part of the owner* as to the frontage to be conveyed will not, in the absence of a showing of fraud, inequitableness, or undue hardship, deprive the purchaser of the *right* to specific performance.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

NOVEMBER 16, 1921.

ACTION in equity for the specific performance of a contract to convey real estate. Decree for plaintiff. Defendant appeals. —*Affirmed.*

*Parsons & Mills,* for appellant.

*E. S. Thayer* and *Fred F. Keithley,* for appellees.

STEVENS, J.—Plaintiff and the defendant E. E. Ogburn, on November 6, 1919, entered into a contract in writing, by the terms of which the defendant, appellant herein, agreed to convey the following described real estate, "Residence known as 1233 Twenty-third Street, Des Moines, Iowa," to the plaintiff for a consideration of $3,150, to be paid $500 on signing the

contract, by assuming a mortgage of $1,500 on the property, and the balance in cash, when the deed was delivered.

The parties agree that the residence in question is located on Lot 397, University Land Company's Second Addition to University Place, in the city of Des Moines, and that the lot is 60 feet in width, fronting on Twenty-third Street, and 161.3 feet deep on the south side. Plaintiff had previously sold a tract 30 by 80 feet off the northeast corner of the lot, leaving the depth of the north side of the lot 81.3 feet. The distance from the south line to the porch is 3 or 4 feet, and from the north line to the house 16.25 feet, and from the rear of the house to the rear end of the north half of the lot 8.6 feet. There is a driveway on the north side of the lot, and an opening in the wall, used as a coal chute. The reason assigned by defendant for refusing to complete the contract and convey the property to plaintiff is that she intended to reserve 10 feet from the north side of the lot; or in other words, that she offered and intended to sell only the south 50 feet of the lot, running back on the south side, as stated, 161.3 feet to the alley, and on the north side 81.3 feet.

Defendant does not claim that she made any statement to plaintiff as to the frontage she would convey, but she did testify that she told a witness by the name of Hull, who went with plaintiff to inspect the property before purchasing, and who was interested with him in the transaction, that she was selling only 50 feet. Hull denied that anything was said about the width of the property, but testified that defendant told him that the south side extended to the alley, and that she had previously sold a tract 30 by 80 out of the northeast corner of the lot. Plaintiff testified that defendant said nothing to him about the number of feet frontage, but that he supposed he was buying whatever went with the designated street number of the property.

There is a conflict in the testimony as to what occurred after the contract was signed. Plaintiff testified that defendant telephoned to him one evening, requesting that he come and see her; that he told her he had an engagement, and could not do so; that she then informed him that she had made a mistake in the contract, and had prepared a new one for him to sign;

that she intended to sell only 50 feet of the lot; and that it was necessary to have a new contract. Plaintiff refused to go to see defendant, and insisted that he had purchased all that remained of the lot.

Defendant testified that she had previously listed the south 50 feet of Lot 397 for sale; that she desired to retain title to the north 10 feet, as she thought it would aid her to sell Lot 396, which she owned, or would provide a sufficient frontage for the erection of two houses thereon; that, after plaintiff obtained possession of the abstract, and learned that Lot 396 had a frontage of 60 feet on Twenty-third Street, he demanded that she convey that amount to him. She admitted that she called plaintiff over the telephone, but testified that it was for another purpose; that, during the conversation, plaintiff informed her that she must convey him 60 feet; and that she then had a contract containing a correct description prepared, which she asked plaintiff to sign. After his refusal to do so, she took the $500 check, which had been turned over to her at the time the contract was signed, in pursuance of its terms, and left it lying upon his workbench, and told him she would convey only the south 50 feet of Lot 397 to him. Later, she entered into a contract with defendant Samuel Orebaugh, to sell the south 50 feet to him for $3,500. Orebaugh went into possession, but has paid no part of the agreed purchase price. Defendant at first priced the property to plaintiff at $3,500, but after some negotiations, a consideration of $3,150 was agreed upon.

The grounds upon which appellant seeks to avoid specifically performing the contract are that the minds of the parties never met, as to the property to be conveyed; that no particular frontage was specified in the contract; that it did not identify the property; that there was a mistake and misunderstanding between the parties as to the frontage. The contract, as written, is in no respect lacking in certainty. The property is as fully identified as it would have been if the proper lot and block number had been written in the contract, instead of the street number. "1233 Twenty-third Street" evidently means one lot, with all of the improvements thereon and appurtenances belonging thereto. The evidence fails, as we interpret it, to

establish a mutual mistake as to the property covered by the agreement.

May the defendant avoid specific performance upon the ground that she, by mistake or oversight, failed to reserve 10 feet off the north side of the lot, or that she offered or intended to sell only the south 50 feet?

Both Hull and plaintiff testify positively that nothing was said by defendant to either of them as to the frontage of the property, and that they did not know the width of the lot, at the time the contract was signed. The contract was written and the description inserted by the defendant. If the defendant offered to sell plaintiff but 50 feet, and the price was fixed with reference thereto, then, of course, there was a mutual mistake; and the court, had defendant asked therefor, must have reformed the instrument so as to express the true agreement of the parties. The evidence, however, wholly fails to show that the mistake, if any was made, was mutual, or that plaintiff seeks an unfair advantage on account thereof. No charge of fraud or inequitable conduct on the part of plaintiff is made, nor was any evidence offered to prove what was the value of the property with the 10-foot strip reserved, or that the price agreed upon was unfair or inequitable for the entire lot, or any fact or circumstance rendering the enforcement of the contract unfair, inequitable, or unconscionable. Aside from the incidental fact shown in the evidence that Orebaugh agreed to pay $3,500 for the south 50 feet of the lot, there is no circumstance tending to show that the price agreed upon was not adequate. Contracts to convey real property will not be enforced where they are uncertain, indefinite, or ambiguous in their terms, or when it would be unfair, inequitable, or unconscionable to enforce them. *Kirkpatrick v. Pettis*, 127 Iowa 611; *Olson & Nessa v. Rogness*, 173 Iowa 331; *Halsell v. Renfrow*, 14 Okla. 674 (78 Pac. 118); *Friend v. Lamb*, 152 Pa. 529 (25 Atl. 577); *Mansfield v. Sherman*, 81 Me. 356 (17 Atl. 300); *Smith v. Shepherd*, 36 Iowa 253; 4 Pomeroy on Equity Jurisprudence (4th Ed.), Section 1405.

Courts of equity may also decline to specifically enforce a contract upon the ground of mistake; but an examination of the cases so holding will reveal that the mistake must be of such

character as to amount to fraud or bad faith, or to render specific enforcement inequitable or unjust, or to produce a hardship upon the party against whom the relief is sought. The mistake, if any is shown in this case, was on the part of the defendant only. The rule where the mistake is due solely to the defendant is stated in 5 Pomeroy on Equitable Remedies (2d Ed.), Section 783 (5 Pomeroy on Equity Jurisprudence, Section 2205), as follows:

"The most difficult cases are those where the mistake is due solely to the defendant, without negligence on his part, or inducement or advantage taken by the plaintiff. It is plain that not every material mistake in such a case will enable the defendant to avoid performance of 'he contract. The rule may be stated that, where the mistake is solely due to the defendant, but without his fault, equity will refuse specific performance only where the mistake is of a vital part of the contract,—of the *corpus* of the agreement,—and of such nature that enforcement would be a great hardship. Thus, it is said by Justice Fry that for a mere mistake in acreage equity will not refuse specific performance. 'The mistake is not one which goes to the *corpus* with which the court deals. It is not a mistake as to the essential part. * * * A mere difference in quantity has never been held to be a bar to specific performance.' Where the mistake is such that the whole contract is one the defendant had no intention of entering into, as where the defendant bid in one lot of land thinking it was an entirely different piece, equity will not compel him to perform the agreement; neither will it where the mistake, though not total, is so great that it should have suggested to the plaintiff that a mistake had been made, or, if that element be lacking, where the difference arising from the mistake is so great that the defendant is subjected to an entirely different operation of the contract, hard and oppressive upon him."

As already pointed out, a driveway entered the lot from Twenty-third Street on the north side. If 10 feet were reserved, the partition line would be brought within 6.25 feet of the house, rendering it difficult, if not impossible, for a serviceable driveway to be constructed on that side. The distance between the south line and the porch does not exceed 3 or 4 feet. It

would be difficult, under these circumstances, for a vehicle to reach the rear 80 feet of the lot from Twenty-third Street. To what extent the reservation of 10 feet off the north side of the lot would impair the value of the remaining portion thereof, is not shown; but we may infer from the evidence that it would materially affect the same; and it is probably also true that the addition of 10 feet to the south side of Lot 396 would materially enhance its value. We are persuaded, however, that the record does not disclose grounds upon which a decree of specific performance may properly be denied. While courts are reluctant to specifically enforce contracts, when to do so will work unnecessary hardship to one of the parties, nevertheless relief will be granted where the facts shown entitle the party seeking the same thereto. The discretion resting in the court is a legal one; and while it has often been said that specific performance is a matter of grace, and not of right, this does not mean that the court may arbitrarily or captiously refuse to grant specific performance.

It is our conclusion that no such mistake or hardship is shown in this case as to call for a reversal. The decree of the court below is in harmony with the facts shown in the record, and it is, therefore,—*Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.

DE GRAFF, J., takes no part.