# Elbert *versus* O'Neil.

1. In equitable actions of ejectment, a verdict for the plaintiff which is equivalent to a decree of specific performance by the defendant of an agreement for the sale of land is of grace merely, and will not be permitted unless the equity of the case is clearly with the plaintiff.

2. An aged widow, at the instance of a friend who called on her the morning after her husband's funeral, agreed verbally to sell him a tract of land ; a few days afterwards, when the parties ascertained that by her husband's will the land was devised to her, she executed an agreement of sale in writing, in pursuance of the verbal agreement. She soon afterwards notified the purchaser that she repudiated the agreement, on the ground that at the time it was made she was in an unfit mental condition to make the agreement, that she was at that time ignorant of the amount and condition of her husband's estate, and had not yet elected whether or not to take under his will. In an action of equitable ejectment by the purchaser to enforce specific performance of the articles of agreement, in which the evidence was to the above effect : *Held*, that the court should have directed a verdict for the defendant.

3. The facts above set forth did not constitute such an election in pais by the widow to take under her husband's will as would be binding on her, either as to heirs of the husband or the purchaser under the articles of agreement.

February 7th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Chester county :* Of January Term 1882, No. 191.

Ejectment, by Owen O'Neil against Hannah Elbert, to enforce specific performance of articles of agreement whereby the defendant agreed to sell to the plaintiff a tract of land containing about twenty acres. Plea, not guilty.

On the trial, before FUTHEY, P. J., the plaintiff showed title in Isaac Elbert, and put in evidence his will, proved Feb-

ruary 11th 1882, wherein he devised the premises in question to his wife, Hannah Elbert, the defendant. Also articles of agreement dated February 11th 1882, whereby the defendant agreed to sell to plaintiff said tract for the sum of $1,530, of which $400 was paid in cash at the execution of the agreement, $600 was to be paid upon the delivery of the deed, and the balance to be secured by mortgage payable in one year. The plaintiff proved payment of the $400, when the agreement was executed, and by leave of court paid into court $630, and filed a bond and mortgage duly executed by him to Mrs. Elbert for the balance of the consideration. He also filed a deed, prepared to be executed by Mrs. Elbert in consummation of the agreement.

The defendant's testimony was to the following effect:— Mrs. Elbert was a colored woman, about sixty-five years of age. Her husband, Isaac Elbert, died February 2d and was buried February 5th 1882. The following day the plaintiff called to see her, about 8 A. M., at which time she was distressed not only by the loss of her husband but by having just learned that a note given by her husband had been protested while he lay a corpse, and at the plaintiff's suggestion she agreed verbally to sell to him the tract at $80 an acre, that being the price her husband had asked for it in his lifetime; they then went to Mr. Elwood Michener to have the agreement drawn; he said nothing could be done until it was ascertained if Isaac Elbert had left a will; a few days afterwards the will was found, and by it the tract was devised to Mrs. Elbert, and she was made executrix. The will was proved February 11th 1882, and on the same day the parties went to the office of William M. Hayes, Esq., in West Chester, where the agreement in controversy was drawn and executed.

The defendant further testified that on February 11th she was in a confused and nervous state of mind and did not fully understand what she was doing; that she had not a knowledge of the amount and condition of her husband's estate, nor of her rights in respect thereto; that no appraisement had been made, and that she had not then elected whether to take under the will or not. Within a month after making the agreement she notified O'Neil that "she could not let that land go," and offered him $100 to cancel the agreement. O'Neil refused this and brought this suit April 3d 1882.

The defendant presented, inter alia, the following point:

3. "Under the evidence in the case the plaintiff is not entitled to recover." Refused.

In the charge the court said:

"It is the duty of the jury to inquire into the condition of mind of the defendant, not only at the time the verbal agree-

ment was made, but during the ensuing week, and on the following Saturday. The verbal agreement having been made on Monday, it appears that the plaintiff came to West Chester, procured a copy of the will, returned home, had a further conversation with the plaintiff, again visited West Chester on Saturday, in company with the plaintiff, when the terms of the verbal agreement were reduced to writing, and the agreement then executed. The condition of mind of the defendant during that period of time, becomes an important question for you to determine. If, at the time the terms of the agreement were reduced to writing in her presence, and it was executed, her mind was in a condition to understand and appreciate the contents of the paper, if there was no unfairness and overreaching attempted by the plaintiff in its execution, she was bound by the agreement and ought to have carried out its provisions.

"In determining the question as to whether there was any overreaching on the part of the plaintiff in the execution of the contract, it is your duty to examine the evidence in the case, in order to ascertain whether the plaintiff used any improper influence upon the mind of the defendant, who it is alleged was then suffering from affliction, owing to the recent loss of her husband, and by reason thereof may not have been in a mental condition to enter into a contract of this character. You will also inquire into the nature of the contract, and ascertain whether the price to be paid for the land was inadequate or not."

The jury found a verdict for the plaintiff, the defendant to have the right, upon execution and delivery of the deed, to take out of court the purchase money and the bond and mortgage deposited by the plaintiff. Judgment was entered on the verdict, whereupon the defendant took this writ of error, assigning for error, inter alia, the refusal of her point, that under the evidence the plaintiff was not entitled to recover.

On December 11th 1882, after the rendition of the verdict, and the day before judgment was entered thereon Mrs. Elbert filed in the Orphans' Court her election in writing not to take under her husband's will.

*John J. Gheen* and *Wm. M. Hayes*, for the plaintiff in error, cited : Anderson's Appeal, 12 Casey 476 ; Kreiser's Appeal, 19 P. F. S. 194 ; Toomey's Estate, 2 W. N. C. 682.

*Thomas W. Pierce*, for the defendant in error, cited : Cauffman *v.* Cauffman, 17 S. & R. 16 ; Light *v.* Light, 9 Har. 407.

Mr. Justice STERRETT delivered the opinion of the court, March 26th 1883.

[Elbert *v.* O'Neil.]

In equitable actions of ejectment, grounded on articles of agreement for the sale of land, recovery by the vendee is not of strict right but always of judicial grace. Under our mixed system of jurisprudence, in which principles of equity are administered in common law actions, ejectment is practically a substitute for a bill in equity to enforce specific performance of the contract. The trial judge, with the aid of a jury to assist him in determining disputed questions of fact, occupies the place of a chancellor and should never sanction a verdict, the effect of which would be specific enforcement of the contract, unless the equity of the case is clearly with the plaintiff. In doubtful cases he should withhold his aid and thus remit the plaintiff to an action at law for the recovery of such damages as he may have sustained by breach of the contract. These principles are recognized in many of our cases, among which are Henderson *v.* Hays, 2 Watts 148 ; Freetly *v.* Barnhart, 1 P. F. Smith 279 ; Piersol *v.* Neill, 13 Id. 420 ; Brady's Appeal, 16 Id. 277 : and Weise's Appeal, 22 Id. 351. In Brady's Appeal, supra, which was a proceeding in the Orphans' Court to enforce specific performance, it is said the principles governing that subject are the same, whether the case be in the Orphans' Court or in the Common Pleas. "In equity proceedings it is well settled, the decree is of grace and not of right, and a chancellor if he finds reason to withhold his assistance, will refuse specific performance and leave the party to his remedy for damages. . . . It is the duty of the judge trying the cause, if the case be insufficient in equity, to take it from the jury by instructing them that upon all the facts proved, the plaintiff is not entitled to a verdict. He takes the place of a chancellor in such a trial and must see that a verdict be not rendered against the principles of equity. For though the action is in form at common law, the plaintiff seeking to recover on an equitable title is permitted to do so only on the principle that equity considers that as done, which according to equity ought to be done. If, therefore, a chancellor would feel that he ought not to be moved by the facts presented, a decree should not be granted."

Applying these principles to the facts of this case, as presented by the evidence, we are of opinion that the defendant's third point should have been affirmed, and a verdict directed in her favor.

Early in the morning after the funeral of Mrs. Elbert's husband the plaintiff below called at her residence and made a verbal agreement with her for the purchase of the land in question, which agreement was reduced to writing and signed by the parties a few days thereafter. When the verbal contract was entered into, she was aware that her husband had made a

6 OUTERBRIDGE.—20

[Elbert *v.* O'Neil.]

will, in which she was appointed executrix, but she was igno-
rant of its provisions.   Before signing the agreement, how-
ever, she learned from the will that the land in question was
devised to her; but, beyond that, she had very little if any in-
formation as to the condition of her deceased husband's estate.
It is very evident that neither then nor for several weeks there-
after had she sufficient knowledge of its condition to enable her
to form an intelligent judgment as to whether it would be to
her advantage to accept the provisions of the will or not; and
if she had been in possession of the necessary information, it is
very doubtful whether she was in a proper frame of mind to
consider and decide that question.   Her attending physician,
Dr. Thompson, testified in substance that he visited her pro-
fessionally about a week after her husband's death and found
her in a very nervous condition, laboring under great nervous
prostration, very much worried, &c.   He also expressed great
doubt as to " whether she was competent to enter into a bar-
gain or contract."   Shortly after the agreement was executed,
when she had recovered from the shock occasioned by her hus-
band's death, and acquired some information as to the condition
of the estate, its assets, liabilities, etc., she repented of what she
had done and notified the defendant in error of her determina-
tion not to receive the purchase money or execute a deed, and
offered him $100 to cancel the contract without litigation.

It is contended that, by her agreement to sell the land, the
widow elected to take under the will, and whatever may be the
effect of such election as between her and the heirs of the tes-
tator, it is absolutely conclusive as between her and the defend-
ant in error, who is a stranger to the estate.   As applied to the
undisputed facts of this case, we are not prepared to admit the
correctness of this proposition.   Clearly, as between her and
the heirs, an election, under such circumstances, would not be
binding on her; nor is there any good reason why a stranger,
who, in such indecent haste and with such knowledge of the
widow's circumstances as the defendant in error possessed, ob-
tains from her what he claims to be a conclusive election to
take under the will, should be placed on a higher equitable plane
than an heir would be permitted to occupy under similar cir-
cumstances.   The right of a widow to make her election under-
standingly is guaranteed to her by the law, and it should be
respected by strangers as well as heirs.

Without adverting to other matters which tend to the same
conclusion, it is sufficient to say that facts and circumstances
disclosed by the testimony, and standing uncontradicted, present
such a case as should induce a chancellor to refuse specific per-
formance of the contract.

If the plaintiff in error neglects or refuses to pay or tender

within a reasonable time, the amount she received on account of purchase money, an application will be entertained for a venire facias de novo, otherwise it is deemed unnecessary.

Judgment reversed.