> Decree affirmed, and appeal dismissed at the costs of appellants.

---

## APPEAL OF RICHARD THOMAS ET AL.

### [ESTATE OF WILLIAM R. THOMAS, DECEASED.]

#### FROM THE DECREE OF THE ORPHANS' COURT OF LACKAWANNA COUNTY.

Argued February 27, 1889—Decided March 18, 1889.

1. By § 55, act of March 29, 1832, P. L. 208, the Orphans' Court is expressly empowered " to send an issue to the Court of Common Pleas of the same county, for the trial of facts by a jury, whenever they shall deem it expedient so to do."

### Statement of Facts.

2. If, therefore, that court be dissatisfied with the conclusions of a commissioner appointed with the powers of an examiner and master, in a pending proceeding, the proper exercise of its discretion in setting aside his report and sending an issue to a jury is not reviewable in this court.

3. But, where the judgment rendered on the issue awarded must be reversed for error in the trial thereof, all proceedings in the Orphans' Court subsequent to such judgment, even though regular, will be set aside, and further proceedings stayed until final determination of the controverted matter.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 180, January Term 1889, Sup. Ct.; court below No. . . . . . . . . . 1885, O. C.

On November 14, 1885, Mrs. Ann Thomas presented her petition setting forth that she was the widow of William R. Thomas, deceased, and praying for a partition of certain real estate, a tract of land in Spring Brook township, between herself and the eight children of said deceased. An inquest was awarded as prayed for and notice given. Thereupon Richard Thomas and others, children of the decedent by a former wife, came into court and, representing that the petitioner was not the lawful wife of William R. Thomas, but was the lawful wife of David Jones, who was living after the death of said William R. Thomas, prayed that the partition proceedings be quashed.

On February 18, 1886, the court appointed *Mr. W. W. Lathrope*, a commissioner, with the powers of an examiner and master, to take testimony and report upon the subject. The commissioner subsequently filed a report, finding as facts, that the petitioner's maiden name was Ann Lloyd, a daughter of Griffith Lloyd, and she was married to David Jones at Llaneatog, Wales, in 1833; that she and her said husband were living at one time at Aberdare, Wales, and thence removed to a farm, two miles distant, called the Falda, where they were living in 1863; that they separated in 1864; that in 1872 the petitioner left Wales and came to America, and on January 16, 1875, was married to William R. Thomas; that at the time of the latter

*See Thomas v. Thomas, following this case.

Opinion of Court below.

marriage the petitioner's first husband was still alive, but " it would seem that the petitioner did not know at this time whether her first husband was alive or not; she made little effort, if any, to ascertain; " that the petitioner had not obtained a divorce from her first husband; and that David Jones was seen alive on May 10, 1883, and so far as evidence showed, he had not after that been seen or heard of.

Upon these facts, the commissioner, citing and considering Kenley v. Kenley, 2 Y. 207; Heffner v. Heffner, 23 Pa. 104; Cropsey v. McKinney, 30 Barb. 47; White v. Low, 1 Redf. 376; Kelly v. Drew, 12 Allen 107; Williams's Est., 8 W. N. 310, found as matter of law that whether the petitioner knew that David Jones was living when she married William R. Thomas, or not, the marriage to William R. Thomas was absolutely null and void, and reported his opinion that the petitioner was not entitled to the partition prayed for and that her prayer should be dismissed.

To the findings of fact and law of the commissioner the petitioner filed various exceptions.

Said exceptions having been argued, the court, HAND, P. J., filed the following opinion and decree:

This question comes before us on the report of the commissioner appointed with the power of a master and examiner, and exceptions thereto.  . The sole question is whether the marriage of Ann Thomas to William R. Thomas was a legal and valid marriage.  After a careful examination of the testimony and the law, we are unable to reach the conclusions arrived at by the learned commissioner.  We are further satisfied that, acting as a chancellor, the conscience of the court must necessarily be informed upon the point in controversy by the aid of a jury.  We therefore direct an issue to be framed in the name of Ann Thomas as plaintiff and the contestants as defendants, to be tried in the following manner:  The plaintiff, Ann Thomas, shall simply put in evidence the certificate of her marriage issued by Benjamin Jay, alderman, and then the affirmative of the issue shall be upon the defend with the burden of proof to show that Ann Thomas was not the lawful wife of William R. Thomas, the decedent, at the time of his death, the plaintiff affirming that she was the lawful wife of William R.

Thomas, and the defendants affirming that she was not his lawful wife. We set aside the conclusions of the learned commissioner and direct that the costs of this proceeding thus far be paid out of the estate of the decedent.

On November 28, 1887, a certificate from the Court of Common Pleas having previously been filed showing that the issue as directed had been tried in that court, resulting in a verdict and judgment for the plaintiff therein: see Thomas v. Thomas, following this case, an alias inquest was awarded, and the cause afterward so proceeded in that on September 26, 1888, a decree was made that the premises described in the petition be sold at public sale. Thereupon the exceptants took this appeal and assigned that the court erred:

1. In overruling the conclusion of the commissioner and master, that the petitioner was not entitled to a partition of the real estate of the decedent.

2. In awarding an issue to be tried in the Common Pleas, because there was no fact in dispute warranting a trial by jury.

3. In ordering partition of the decedent's real estate.

*Mr. S. B. Price* (with him *Mr. C. R. Pitcher*), for the appellants:

No authority is cited opposed to the doctrine of the cases given by the master, which affirm that a marriage during the lifetime of the husband is void. In the case of Heffner v. Heffner, 23 Pa. 104, Judge Knox said: A man having a wife in full life is utterly powerless to make a valid contract of marriage, and his attempt to do so is entirely nugatory. In the case of Kenley v. Kenley, 2 Y. 207, the court said: Though the circumstances attending this case might exempt the defendant from the pains of bigamy, yet her first husband being in full life, and their marriage not annulled by any competent jurisdiction, the marriage was ipso facto void and null. As this is the law of Pennsylvania, the decree of the court below should be reversed.

*Mr. Everett War̶r̶e̶n̶* ̶(̶ *Mr. D̶.̶ J̶.̶ M̶.̶ L̶o̶o̶m̶* with them, *Mr. E. N. Willard*), for the appellee:

The Orphans' Court has the power and it is within its discretion to send an issue to the Court of Common Pleas of the

same county for the trial of facts by a jury, whenever they shall deem it expedient: 1 Rhone's O. C. Pr. 415; 2 Rhone's O. C. Pr. 268. We do not think it necessary to argue here the questions raised in the writ of error to the judgment on the trial of the issue. Certainly, however, the first and second assignments of error in this case are without merit.

OPINION, MR. JUSTICE STERRETT:

In November, 1885, Ann Thomas, as widow of William R. Thomas, presented her petition to the Orphans' Court for partition of the real estate of which he died seised; and thereupon an inquest as prayed for was awarded, and citation to parties interested was issued. In obedience to the citation, the children and heirs at law of the intestate appeared and filed an answer, in which they, in substance, averred that petitioner never was the lawful wife of their father, William R. Thomas; that on the contrary, at the time of her alleged marriage to him, she was the lawful wife of David Jones, who survived their said father, and that the petitioner had, therefore, no interest in the real estate of which the latter died seised. A replication having been filed and issue joined, a commissioner with the powers of an examiner and master was appointed, and afterwards reported in favor of the respondents. The Orphans' Court being dissatisfied with the commissioner's findings and conclusions, set aside his report and directed an issue to the Court of Common Pleas, in which petitioner was plaintiff and the respondents were defendants, "to be tried in the following manner: The plaintiff, Ann Thomas, shall simply put in evidence the certificate of her marriage, issued by Benjamin Jay, alderman, and then the affirmative of the issue shall be upon the defendants, with the burden of proof to show that Ann Thomas was not the lawful wife of William R. Thomas, the decedent," etc.

That issue came on to be tried, and on June 14, 1887, a verdict was rendered in favor of the plaintiff therein, and afterwards certified into the Orphans' Court. Whereupon the court, on November 28, 1887, awarded an alias inquest, with notice, etc., and the matter was so proceeded in that, on September 26, 1888, a sale of the premises described in the petition for partition was ordered, etc. From that decree this appeal was taken. The errors assigned are, (1) setting aside the commissioner's

report; (2) directing the issue to the Court of Common Pleas, and (3) decreeing partition and sale of decedent's real estate.

The first and second specifications are without merit. The commissioner was appointed for the purpose of taking testimony, and reporting facts, etc., for the information of the court. If the court was dissatisfied with his conclusions, and in the exercise of its discretion set aside his report, neither party has a right to complain. The proper exercise of such an undoubted discretion is not reviewable here. By the 55th section of the act of March 29, 1832, P. L. 208, the respective Orphans' Courts are expressly empowered "to send an issue to the Common Pleas of the same county, for the trial of facts by a jury whenever they shall deem it expedient so to do." The power thus given to the court does not appear to have been improperly exercised.

The third specification is more substantial. It depends on the result of the issue in the Common Pleas. If there had been no error in the trial of that issue, the subsequent proceedings in partition in the Orphans' Court would be free from error; but inasmuch as on the writ of error to the Common Pleas in that case, we have found it necessary to reverse the rulings of the court below, and order a venire facias de novo, Thomas's Admr. et al v. Thomas, 297 of this term, the proceedings in the Orphans' Court, subsequent to the order directing the issue to the Common Pleas, must be reversed, and all proceedings stayed until final determination of the question involved in that issue. If it is determined in favor of defendants therein, the petition and all proceedings in partition should be dismissed at the costs of petitioner. If, on the other hand, it is finally determined that she is the widow of William R. Thomas, the proceedings in partition should go on to final decree. Her right to commence and promote those proceedings depended, of course, on whether she was the lawful wife of said Thomas at the time of his decease.

> It is adjudged and decreed that all proceedings, subsequent to the date of the order directing an issue to the Common Pleas, be reversed and set aside: costs to abide the final result, and proceedings to be stayed until determination of appellee's right to have partition of the premises described in her petition.