## Byrne's Estate.

Argued March 10, 1936.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*John C. Bell, Jr.,* with him *Joseph C. Henry,* of *Bell, Truscott, Henry & Sutton,* and *George Hay Kain,* for appellant.

*James G. Glessner* and *Allen C. Wiest,* with them *William A. Allen,* for appellees.

OPINION BY BALDRIGE, J., July 10, 1936:

This is an appeal from the decree of the orphans' court dismissing exceptions filed to the report of an auditor.

R. Philomena Byrne, a widow, died, testate, on January 26, 1933, aged 89 years. Letters testamentary were granted to the York National Bank and Trust Company, which filed a first and partial account showing a balance of $73,128.90 for distribution.

Philomena Shadle, a grandniece of the decedent, claimed all the estate, but pressed particularly her right to the personal property, under an alleged oral agreement entered into some time in March, 1930, whereby the decedent agreed to leave all her estate to the claimant if she would take care of her; and asserted

that the decedent did make a will the latter part of 1930, leaving all her property to her.

The auditor found that such an agreement had been made, but that no definite period was stipulated during which the claimant was to render services; that in pursuance thereof the claimant lived with the decedent from March, 1930, until April, 1931, when she was dismissed; that the claimant, who is not physically strong, was a companion to the decedent, did little actual work, and spent a portion of the time at her father's studio; that before she went to decedent's home, she was earning $10 a week in her father's employ. He found, also, that the evidence offered was insufficient to support the allegation that the decedent had made a will, wherein she gave the claimant all her estate. The decedent's last will was dated November 10, 1931, and contained no provision for the claimant.

The auditor concluded that the oral agreement is unenforceable under the Statute of Frauds (March 21, 1772, 1 Sm. L. p. 389) as to decedent's real estate, and that the appellant is not entitled to specific performance of the agreement as to the personal property, but he awarded her the sum of $560, covering a period of 56 weeks at $10 a week, as the value of services she rendered to the decedent on the faith of the agreement.

Exceptions filed to the auditor's report were dismissed by the court, and this appeal followed.

It is necessary to consider whether the evidence in support of the agreement is sufficient to meet the requirements of the Statute of Frauds. If it is not, the claimant is not entitled to the real estate: Breniman v. Breniman et al., 281 Pa. 304, 308, 126 A. 751. There is no dispute over the proposition that an oral agreement to give land as compensation for services to be rendered is enforceable only if it is followed by exclusive possession of the land and the making of improve-

ments which cannot be adequately compensated in damages: Morrish et al. v. Price et ux., 293 Pa. 169, 142 A. 137. As there was no attempt to prove any facts of that nature, the validity of this claim, in its entirety, depends upon the proof of a writing executed by the decedent.

The appellant insists that she has met the requirements of the statute in that particular, by showing that in 1930 the testatrix made a will, in which she gave her entire estate to the claimant. If the terms of the agreement had been put in writing in the form of a will, that would be deemed a contract within the statute. Brinker v. Brinker, 7 Pa. 53; Smith v. Tuit, 127 Pa. 341, 17 A. 995; McGinley's Est., 257 Pa. 478, 101 A. 807; and Cridge's Est., 289 Pa. 331, 137 A. 455, are a few of the many cases which recognize that doctrine.

We must, therefore, determine whether the auditor was correct in finding that decedent did not make such a will. In an endeavor to prove the execution of a will, and its contents, the claimant called George E. Neff, Esq., who testified that he had prepared a will for the decedent in the latter part of 1930, and that, according to his recollection, she signed it, but he did not remember any of its provisions. A sister of the claimant testified that when she was at the decedent's in February, 1931, she saw a large envelope in a bureau drawer and the decedent stated to her: "That is my will for Philomena, leaving everything I have to her." The mother also testified as to having seen the same large envelope in this drawer and that the decedent said it was a will for Philomena. Mrs. John Channell, another witness, testified that the decedent had said to her: "I have a will made, that Philomena is to get this home and everything in it after my death."

But there was no evidence offered that anyone had actually read the will except Mr. Neff, and, as stated, he did not testify as to its contents. "To authorize

memoriter proof of a lost document or record, the witness must have read it, or otherwise have actual knowledge of it, and be able to speak at least to the substance of the contents": Richards' App., 122 Pa. 547, 556, 15 A. 903; Collins v. Home Ins. Co. of New York, 110 Pa. Superior Ct. 72, 79, 167 A. 621. It will be noted, also, that the will was not made contemporaneous with the alleged contract. The length of time that expired between the making of the agreement and the will creates considerable doubt whether the will was made in pursuance of, or had any connection with, the agreement. There can be no uncertainty, however, that the competent testimony offered leaves us in complete darkness as to its provisions.

The appellant having clearly failed to prove a compliance with the Statute of Frauds, her claim to the decedent's real estate, or its value, cannot be sustained: Sorber v. Masters et al., 264 Pa. 582, 586, 107 A. 892.

Is the claimant entitled to a specific performance of the contract as to the personal estate? "If the contract is entire, and part is within the statute it is unenforceable as a whole, and no action can be maintained to enforce the part which would not have been affected by the statute if it had been separate and distinct from the other part": 25 R. C. L. p. 704. See, also, 27 C. J. p. 318, §404. It is stated in the notes to Traiman v. Rappaport, 71 A. L. R. 475, on page 485, as follows: "Contracts to devise realty and bequeath personalty, or, in cases where the estate of the promisor consists at his death of both realty and personalty ...... are, unless a contrary intention appears from the contract, or the consideration for the devise of real property is distinct and severable from that for the bequest of personal property, generally regarded by the court as entire, not severable and unenforceable as to the part relating to personalty." A number of cases are there cited in support of the general rule. See,

also, 13 C. J. p. 561, §525; Hartley v. Decker, 89 Pa. 470; Mining Co. v. Jones, 108 Pa. 55; Nolt v. Crow, 22 Pa. Superior Ct. 113, 118. In Caton v. Wellershouse et ux., 77 Pa. Superior Ct. 331, the plaintiff filed a bill in equity to compel a specific performance of a written contract to convey a farm with all its stock and tools. Judge TREXLER, speaking for this court, said (p. 333) : "We think also the court was right in declining specific performance for the reason given that the contract not being divisible and the subject-matter being largely personal property, a decree for specific performance would not be granted." We feel constrained to construe the agreement under which the appellant claims she is entitled to all the decedent's estate as indivisible.

Furthermore, a decree for specific performance is not a matter of right, but of grace, and rests within the sound discretion of the chancellor. A decree will not be entered where his conscience does not approve the transaction, or where the law side of the court affords, as here, an adequate and complete remedy: Brady's App., 66 Pa. 277; Caton v. Wellershouse et ux., supra. If the contract as to the personal property is enforced, it will result in the claimant's receiving, according to the report of the auditor, the extraordinarily large sum of approximately $70,000 for her thirteen months' services which were neither arduous nor difficult. This impresses one as a shockingly disproportionate compensation for the services rendered. Equity will not be enforced in an unconscionable contract: Elbert v. O'Neil, 102 Pa. 302; Friend v. Lamb, 152 Pa. 529, 25 A. 577; Hoffman's App., 319 Pa. 1, 5, 179 A. 38. Williston on Contracts, §1425. In Deweese v. Reinhard, 165 U. S. 386, 41 L. ed. 757, Mr. Justice BREWER, speaking for the court, said: "A court of equity acts only when and as conscience commands, and if the conduct of the plaintiff be offensive to the dictates of

natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity." "The doctrine is clearly well settled that, in general, a court of equitable jurisdiction will not decree specific performance of contracts relating to chattels:" Pomeroy on Specific Performance (3d ed.), §11. See, also, Meehan v. Owens, 196 Pa. 69, 72, 46 A. 263. It is stated in Williston on Contracts, §1450, that contracts for personal services are not ordinarily enforceable specifically where *no special skill is required.* The appellant's services were not of that character. Their value could have readily been measured in an action at law. There is no doubt in our minds that Mrs. Byrne could not have insisted on specific performance. The rule is quite generally affirmed that if one party to a contract cannot obtain a specific performance thereof, the other party cannot enforce it: Williston on Contracts, §§1433, 1440.

We have read Thompson v. Stevens, 71 Pa. 161; Smith v. Tuit, supra (127 Pa. 341, 17 A. 995) ; Shroyer v. Smith, 204 Pa. 310, 54 A. 24; McGinley's Est., 257 Pa. 478, 101 A. 807; Cridge's Est., supra (289 Pa. 331, 137 A. 455) ; Craig's Est., supra (298 Pa. 235, 148 A. 83) ; Nusbaum's Est., 101 Pa. Superior Ct. 17, and the other cases cited by appellant. We will not prolong this opinion by attempting to analyze these authorities. Sufficient to state, we are convinced they are not controlling in the instant case. Although the facts in Hertzog v. Hertzog's Admr., 34 Pa. 418; Graham v. Graham's Exrs., 34 Pa. 475; Pollock v. Ray, 85 Pa. 428; Kauss v. Rohner, 172 Pa. 481, 33 A. 1019; Snyder v. McGill, Admrx., 265 Pa. 122, 108 A. 410; Breniman v. Breniman et al., supra (281 Pa. 304, 126 A. 751) ; Conkle v. Byers' Exr., 282 Pa. 375, 127 A. 848; Schoenbachler's Est., 310 Pa. 396, 165 A. 505, called to our attention by appellees, are not identical to the

case at bar, we think the rule is recognized therein, that the measure of damages for breach of an agreement to will property in consideration of services to be rendered is the value of the services performed on the faith of the contract and not the value of the property promised.

A careful review of the exhaustive argument of appellant convinces us that this case was properly disposed of in the able report of the auditor, and that the exceptions thereto were properly dismissed by the learned court below.

Decree is affirmed, at appellant's costs.