McWilliams Estate.

300

Argued November 14, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*John H. Lauer,* with him *George W. Munnell,* for appellants.

*Louis Vaira,* with him *Albert G. Brown,* for appellee.

OPINION BY RHODES, P. J., March 8, 1948:

Appellants, residuary legatees under the last will and testament of Wilbert F. McWilliams, deceased, in these appeals question the validity of a claim for nursing services, board and room made against the estate of the decedent, who died testate on July 31, 1944. At the audit of the account of the executrix, claim was pre-

sented by Elizabeth Jacobs for nursing, board and room furnished decedent from November 1, 1937.

Testimony was taken before the auditing judge in the Orphans' Court of Allegheny County. It appeared that decedent, a bachelor, lived at 908 Locust Street, North Braddock, Pennsylvania, one of three houses which he owned, or in which he had an interest. He was employed as a railroad engineer, and prior to 1937 claimant's husband was his fireman. Decedent weighed about 250 pounds, and his movements were further hampered by an artificial leg.

Pursuant to an oral understanding, claimant, her husband and family of three children went to live with decedent on November 1, 1937, in his home at 908 Locust Street. Claimant acted as housekeeper for the entire household, which consisted of her own family and decedent. She not only made a home for decedent, but she took him back and forth to work as required.

In November, 1943, decedent became ill due to a heart ailment; he quit work and was eventually confined to his bed. On June 26, 1944, he was removed to the home of his niece, Helen Manns, his executrix and one of the two appellants herein. During the time he was ill claimant admittedly rendered services of the most exacting nature to decedent. She carried his meals to him on a tray. She shaved and bathed him, and performed all the functions of a nurse. After March, 1944, he lost control of his organs of elimination and frequent change of bedding and clothing was necessary.

The claim before the auditing judge was based on an alleged oral agreement between decedent and claimant by which decedent agreed to devise and bequeath to her his entire estate in consideration of her care for him. The auditing judge dismissed the claim on the ground that claimant's witnesses failed to establish the alleged oral agreement; he also held that the presumption of payment prevented recovery on the basis of a quantum meruit. Claimant filed exceptions to the adjudication.

Before disposition had been made of the exceptions, claimant filed a petition for a rehearing in which she alleged that the oral agreement between her and decedent was one whereby decedent would leave claimant and her husband all the real estate which decedent owned at the time of his death. She further alleged that one George Gregar, who had lived with decedent and claimant from 1937 to 1939, had just returned from military service in Germany, and would testify that he heard decedent make an oral agreement with claimant to will her and her husband all his real estate in return for her services. Claimant alleged that she was previously unaware of the fact that Gregar knew of the oral agreement between her and decedent until Gregar returned from military service; and that he was unavailable at the time of the hearing in the matter. It appeared to the orphans' court that with the additional evidence set forth in claimant's petition there existed a substantial dispute on a question of fact. Accordingly, an order was made awarding an issue to determine the validity of the claim.

A precept for an issue was directed to the court of common pleas under section 21 (b) of the Orphans' Court Act of June 7, 1917, P. L. 363, 20 PS § 2582; and, since the issue was other than a devisavit vel non, the precept was varied in accordance with the nature of the question submitted as provided by statute. The court sent the issue to the court of common pleas to determine the following question of fact: "In what amount, if any, is the estate of Wilbert F. McWilliams, deceased, indebted to Elizabeth Jacobs for room, board, and nursing services furnished to decedent?"

The matter was heard before a judge and jury in the court of common pleas. Following the introduction of extended testimony by both sides, the jury answered four special questions in favor of claimant as plaintiff, and returned a verdict in her favor in the sum of $5,000. Motions for judgment n. o. v. and for a new trial were overruled. The verdict was reduced to $4,000 and final

judgment entered. The precept was thereupon returned by the court of common pleas to the orphans' court. The orphans' court entered a decree allowing the claim of Elizabeth Jacobs, as amended, in the amount of $4,000, and made a decree of distribution in the estate of Wilbert F. McWilliams, deceased, accordingly. Exceptions to this decree were dismissed. The residuary legatees, Helen Manns and Ida Holt, have appealed from the judgment and the decree. See *Cross's Estate*, 278 Pa. 170, 122 A. 267; *Leadenham's Estate*, 289 Pa. 216, 137 A. 247; *Rothermel v. Rothermel et al.*, 345 Pa. 139, 27 A. 2d 33.

The evidence was sufficient to justify the verdict. We are not unmindful that claims against the estate of a decedent for personal services rendered during the decedent's lifetime are to be closely scrutinized; and that such claims must be established by evidence that is clear, precise, and indubitable. *Cramer v. McKinney et al.*, 355 Pa. 202, 203, 49 A. 2d 374; *Mooney's Estate*, 328 Pa. 273, 274, 194 A. 893; *Reed Estate*, 152 Pa. Superior Ct. 389, 33 A. 2d 251.

At the trial in the court of common pleas it appeared that claimant's sister, Marie Jacobs, visited the family at decedent's home at least once a week. She was present shortly after claimant moved to decedent's home, and heard a conversation between claimant, claimant's husband, and decedent in which decedent expressed his satisfaction with the arrangement, and said that "he intended to keep his part of the bargain and would leave them everything, in his will." George Gregar, the witness hitherto unavailable to claimant, was living with decedent when claimant and her family came there in 1937. This witness overheard claimant, her husband, and decedent discussing the arrangement between the parties a few days after claimant arrived. Gregar testified: "A. From what was said, he was to leave them all his property, everything he had at the time of his death there; and they were to live there and make a home for

him while living, and he would live as one of the family."
A lifelong friend and fellow railroad employee, Fred
Seefeld, testified that decedent often expressed satisfac-
tion with the care claimant gave him, and that he said
he was leaving the property to claimant and her husband.

According to the defense, the arrangement between
decedent and claimant was one whereby decedent was to
pay claimant $50 a month, without any rental charge
for herself and family, furnish the coal, and take care
of one-half of the telephone, gas, and electric bills.
Claimant, it was alleged, was fully compensated under
this agreement. This is in contrast with testimony that.
decedent stated that he was satisfied with the agreement
and the services rendered by claimant; that he did not
pay claimant as this was provided for in his will; and
that he paid no board.

Claimant's testimony also showed that appellant
Helen Manns and her husband visited decedent at eleven
o'clock on the night of June 22, 1944; that they asked
claimant's sister, who was temporarily in charge, to
leave them alone with decedent; that after two hours
of discussion and argument decedent told the Mannses
to bring up a will and he would sign it; that on June
26, 1944, decedent was taken by the father of appellant
Helen Manns in an automobile to the Manns home, where
he lived until his death on July 31, 1944. The will desig-
nating appellants as residuary legatees was apparently
executed the day after decedent was taken to the Manns
home.

In view of the verdict which was accepted by the
orphans' court we must assume the facts favorable to
claimant so far as the proof justifies. See *Leadenham's
Estate*, supra, 289 Pa. 216, 221, 137 A. 247. We think
claimant sufficiently established an oral contract with
decedent whereby decedent for her services was to will
all his property. We agree with the statements in the
opinion of the court of common pleas that "the evidence
in the instant case leaves no doubt about the agreement

between plaintiff and the decedent, that its terms are clear, and that the jury was justified in finding as it did"; and that there was uncontradicted evidence of the services rendered by claimant. As decedent failed to compensate claimant, in accordance with the alleged agreement, she was entitled to the reasonable value of the services performed of which there was evidence for the jury's consideration. *Szusta v. Krawiec et al.,* 144 Pa. Superior Ct. 530, 532, 19 A. 2d 495; *Bemis et ux. v. Van Pelt et al.,* 139 Pa. Superior Ct. 282, 288, 11 A. 2d 499. The measure of damages for breach of an agreement to will property in consideration of services to be rendered is the value of the services performed on the faith of the contract and not the value of the property or estate promised to be given. *Cramer v. McKinney et al.,* supra, 355 Pa. 202, 204, 49 A. 2d 374; *Szusta v. Krawiec et al.,* supra, 144 Pa. Superior Ct. 530, 532, 533, 19 A. 2d 495; *Leppold's Estate,* 145 Pa. Superior Ct. 60, 63, 64, 20 A. 2d 827; *Byrne's Estate,* 122 Pa. Superior Ct. 413, 186 A. 187.

Appellants rely largely upon cases where the burden is upon claimant to overcome the presumption of periodic payments for the services rendered. There was here no legal implication that claimant's services were periodically paid for since, by its terms, the agreement postponed payment until the death of the promisor; nor is there any implication that the services were voluntarily performed, as there was no legal or moral duty upon claimant, a stranger, to devote her time and efforts in discharging personal and household duties for decedent without compensation. *Szusta v. Krawiec et al.,* supra, 144 Pa. Superior Ct. 530, 533, 19 A. 2d 495; *Leppold's Estate,* supra, 145 Pa. Superior Ct. 60, 64, 20 A. 2d 827.

Appellants contend that there was a material variance between the allegation in claimant's petition for rehearing that there was an oral contract by decedent to devise all his real estate to claimant for her services, and the proof on the trial of the issue which showed a contract to devise all his property, both real and per-

sonal, to claimant. In this case the factual questions were the result of the issue directed to the court of common pleas by the orphans' court, and not the result of formal pleadings as in an ordinary action at law. The proofs correspond substantially with the issue framed by the orphans' court, and directed to and tried in the court of common pleas. We find no such variance as would warrant us in disturbing the verdict. Cf. *Szusta v. Krawiec et al.*, supra, 144 Pa. Superior Ct. 530, 533, 19 A. 2d 495.

The witness, Fred Seefeld, testified, inter alia, that about February 9, 1944, he witnessed a will for decedent, and that he read the same. This alleged will was never found or produced. The witness stated that the will gave "the property" to Mr. and Mrs. Jacobs, referring presumably to the 908 Locust Street property. A motion to strike this testimony was made. It is now claimed that it was prejudicial, and that its admission is ground for a new trial. This contention cannot be raised for the first time on appeal. *American Surety Co. of New York v. Dickson et al.*, 345 Pa. 328, 336, 28 A. 2d 316; *Hereda et vir v. Lower Burrell Township*, 159 Pa. Superior Ct. 262, 265, 48 A. 2d 83. It is true that testimony showing a legacy in a revoked will is not admissible to prove the existence of a contract to make a will in return for services rendered unless the will itself shows, or it appears by other evidence, that the legacy was given in pursuance of a contract to make a will. *Cramer v. McKinney et al.*, supra, 355 Pa. 202, 205, 49 A. 2d 374. In the present case, the contract was sufficiently established by other evidence. The rather indefinite oral testimony of the witness on this point did not prejudice appellants, and it does not warrant the granting of a new trial. If its admission was error, it would not under the circumstances merit a reversal.

Finally, appellants complain of the action of the orphans' court in giving claimant a second chance to establish her claim. It is contended that the witness

Gregar's testimony was not within the rules relating to after-discovered evidence and the granting of a new trial on such ground. Appellants' complaint is in reality to the action of the orphans' court in awarding an issue. We think it was entirely proper for the orphans' court to send the disputed question of fact before a jury; and, as a review thereof shows, claimant's evidence was sufficient to sustain the finding of fact in her favor by the jury. "The orphans' court shall have power to send an issue to the court of common pleas of the same county, for the trial of facts by jury, whenever they shall deem it expedient so to do": Section 21 (a) of the Orphans' Court Act of June 7, 1917, P. L. 363, 20 PS § 2581. The power thus given to the court does not appear to have been improperly exercised. See *Appeal of Thomas et al.*, 124 Pa. 640, 645, 17 A. 181. The grant of a rehearing in this case and the direction of an issue to the court of common pleas to determine the validity of the claim were the proper exercise of an undoubted discretion by the orphans' court.

The judgment of the court of common pleas is affirmed, and the final decree entered in the orphans' court is also affirmed, at the cost of appellants.