An appellate court will ordinarily accept as conclusive the findings of fact of a chancellor approved by the court en banc, but this rule is not applicable where the evidence, in order to prevail, must be clear, precise and indubitable or where it must meet some other prescribed standard of proof. Whether findings are supported by evidence of that quality is always a question of law and therefore reviewable by the appellate court.* In the present case it is our opinion that they are not so supported, — a conclusion which requires a reversal of the decree entered by the court below.
Decedent, John S. Hummel, owned two adjoining properties in Lewisburg and also a small amount of personal property. He lived in one of these properties and rented out the other. His wife died in 1939 and his only child, a son, in February, 1947. He himself died at the age of 83 years in December, 1947, leaving as his only heir a granddaughter who resides in Chicago. *Page 408 
Claimant, Gay E. Stafford, nursed Mrs. Hummel in her last illness. After Mrs. Hummel's death she continued to live in the property occupied by Hummel as his housekeeper, and remained in that capacity until his death. Her claim, as set forth in her petition, is that four days after Mrs. Hummel's death Hummel orally requested her to live in his house, perform for him all the duties of a housekeeper, and, during his illness, nurse and take care of him during the remainder of his life; in return he orally agreed to make a will giving and conveying to her for such services all of his property, real and personal; she orally agreed to his request and, relying on his promise, remained with him from 1939 until his death in 1947, performing the household work, nursing him from time to time, and assisting him by financial advancements, for all of which services and advancements she received no compensation at the time. Hummel died without a will. Claimant prayed for a decree of specific performance of the alleged agreement. This the court below refused, but it awarded claimant the sum of $3,888 as compensation for the services she rendered decedent and the sum of $800 in satisfaction of her claim for money loaned to him. The administrator d.b.n. of Hummel's estate appeals from that award.
That the court below was right in refusing specific performance is beyond question. Decedent's estate consisted almost entirely of real estate and the Statute of Frauds bars specific performance of a contract to convey or devise real estate where the alleged agreement is not evidenced by writing:Anderson Estate, 348 Pa. 294, 35 A.2d 301. The only relief available in such a case is the recovery of money damages, the measure of such damages being, not the estate promised to be given, but the value of the services rendered on the faith of the agreement: Kauss v. Rohner, Administrator, 172 Pa. 481,488, 489, 33 A. 1016; Anderson Estate, *Page 409 348 Pa. 294, 296, 35 A.2d 301, 302; Bemis v. Van Pelt, Executor,139 Pa. Super. 282, 288, 11 A.2d 499, 502; Leppold'sEstate, 145 Pa. Super. 60, 63, 64, 20 A.2d 827, 828;McWilliams Estate, 162 Pa. Super. 299, 305, 56 A.2d 241,244, 245. In order to recover such damages, however, it is incumbent upon the claimant to prove the making of the contract, for, when one claims on an express contract to pay a fixed compensation, he cannot, on failure to prove the contract, recover on a quantum meruit for the value of his services: Mitten v. Stout, Executor, 284 Pa. 410, 412,131 A. 360; Cramer v. McKinney, Executors, 355 Pa. 202,204, 49 A.2d 374, 375. This is especially so because, if the suit were on a quantum meruit for services rendered, different considerations would apply in regard to the presumption of periodic payments and the effect of the Statute of Limitations.
The question arises, then, whether claimant in the present case proved the existence of the contract under which she claims. In that connection it should suffice to repeat but a few of the judicial admonitions that have been proclaimed concerning the standard of proof required to establish a claim of this nature against a decedent's estate. "This is one of the class of claims against a dead person's estate that must be subjected to the closest scrutiny and only allowed on strict proof. . . . Claims of this nature against dead men's estates, resting entirely in parol, based largely upon loose declarations presented generally years after the services in question were rendered, and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done. We cannot too often repeat the cautions we have so frequently uttered upon this subject . . .": Reynolds, Executrix, v.Williams, Executor, 282 Pa. 148, 150, 127 A. 473, 474. "A parol contract of a decedent to give the plaintiff a portion of his estate *Page 410 
in consideration of services rendered . . . can only be enforced when clearly proved by direct evidence, and when its terms are definite and certain. Claims of this nature should receive the closest and most careful scrutiny.": Calvert v.Eberly, Administrator, 302 Pa. 152, 156, 153 A. 146, 148. "It is axiomatic that to recover on a verbal agreement for services rendered to a decedent, the proof must be clear, direct and positive, and the terms of the liability must be definite and certain": Houston's Estate, 318 Pa. 300, 303, 178 A. 479, 480. "We have said many times that claims of this nature must be subjected to the closest scrutiny, being objects of just suspicion . . . and must be established by evidence 'clear, precise and indubitable' ": Mooney's Estate, 328 Pa. 273, 274,194 A. 893, 894. "Claims against a decedent's estate for wages for personal services, where it is alleged that the same are to be paid for by testamentary provision, must be examined with great care.": Roberts Estate, 350 Pa. 467, 468, 469,39 A.2d 592, 593. "Claims against a decedent's estate for breach of an oral contract to make a will are the subject of the closest scrutiny, being the objects of just suspicion, and must be established by evidence clear, precise and indubitable": Cramerv. McKinney Executors, 355 Pa. 202, 203, 204, 49 A.2d 374, 375.
What is meant by the statement that the evidence must be clear, precise and indubitable? It means that the witnesses must be "credible, . . . distinctly remember the facts to which they testify, and narrate the details exactly." (Leonard v.Coleman, 273 Pa. 62, 69, 116 A. 550, 552; Miller's Estate,279 Pa. 30, 38, 123 A. 646, 649); that the evidence "is not only found to be credible, but of such weight and directness as to make out the facts alleged beyond a reasonable doubt." (Vogel,Administrator, v. Taub, 316 Pa. 41, 43, 173 A. 270, 271;Doneyho v. Scottdale Connecting R.R. Co., 330 Pa. 207, 209,199 A. 162, 164); that "the witnesses must be found *Page 411 
to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." (Broida v. Travelers Insurance Co., 316 Pa. 444,448, 175 A. 492, 494; Foley, Executor, v. Wasserman,319 Pa. 420, 424, 179 A. 595, 597; Aliquippa National Bank v.Harvey, Executrix, 340 Pa. 223, 232, 16 A.2d 409, 414; Tate v.Metropolitan Life Insurance Co., 149 Pa. Super. 558, 562,27 A.2d 283, 285).
Tested by these severe criteria, what is the evidence presented by this claimant to sustain her claim of a contract? There were four witnesses upon whose testimony she relies for that purpose. Of these, a Mrs. Williams testified that decedent said: "I'll take care of her"; a Mrs. Deppen testified that decedent said: "I don't know why she wants to go to work, because after I'm gone there will be enough there for her"; a Mrs. Hastings testified that decedent said "he would take care of her." Such loose and vague declarations of testamentary intentions certainly do not constitute a contract and are wholly insufficient to warrant a recovery: Roberts Estate,350 Pa. 467, 472, 39 A.2d 592, 594. The only testimony in regard to an agreement between claimant and decedent was given by her daughter, a Mrs. Meier, who stated that on one occasion, while visiting her mother, she asked decedent, in her mother's presence, "if he was paying her, and he said 'no'. He had made an agreement with her. He was going to give her the property. He was going to make a will, and I should consider that place as my home." She also testified that he repeatedly said that "he was going to fix everything for her [Mrs. Stafford] and make a will so she wouldn't have to worry about the rest of her life *Page 412 
like he had to worry about his," and that "he always assured me he was going to take care of my mother; that he was going to make a will." It should be immediately obvious, even accepting all of this testimony as true, that it falls far short, both quantitatively and qualitatively, of establishing claimant's case. While decedent is said to have referred to an "agreement" there is nothing to show that his promise to "give her the property" was in return for any promise on her part to work for him until his death or that there was any other consideration necessary to create a contract; it does not appear that his statement that he was "going to make a will" was anything more than a voluntary declaration on his part, lacking wholly the binding force of a contractual obligation (cf. Reynolds,Executrix, v. Williams, Executor, 282 Pa. 148, 152, 127 A. 473,474). Moreover, Mrs. Meier's testimony does not support Mrs. Stafford's claim that decedent was to will her "all of his property", since it refers only to the property in which she was then living with him. The fact, too, that decedent allegedly declared that Mrs. Meier was "to consider that place as my [her] home" necessarily militates against the acceptance of her testimony, in that, in addition to her being claimant's daughter (cf. Smith Estate, 162 Pa. Super. 307, 309,57 A.2d 681, 682), she thus discloses a personal interest in the success of her mother's claim. To allow a recovery by claimant on this mere shred of testimony, so weak in every respect, would be to run counter to all the principles enunciated in the cases hereinbefore cited.
Mrs. Stafford's claim of $800 for money allegedly loaned to decedent cannot be sustained. Not only was there no claim of a loan in her petition, but there is no adequate testimony to support it. Her petition alleges that she gave decedent various sums of money. And, *Page 413 
as far as the evidence is concerned, the only testimony is that from time to time she made payments out of her own funds for household items and for repairs to the property they occupied, but the evidence is not sufficient to establish that those outlays were regarded as loans or that decedent ever promised to reimburse her therefor.
It appears that claimant, ever since decedent's death, has continued to occupy the property in which she and the decedent lived, and his estate now asserts a claim against her for its rental value. In view of the fact, however, that, apart from other considerations, there was no testimony offered as to what such rental value was, this counter-claim cannot be allowed.
The decree is reversed; the costs to be paid by decedent's estate.
* Ralston v. Philadelphia Rapid Transit Co. (No. 1), 267 Pa. 257,269, 110 A. 329, 333; Miller's Estate, 279 Pa. 30, 38,123 A. 646, 649; Horsey v. Ciaroro, 280 Pa. 513, 517, 124 A. 677,678; Witten v. Stout, Executor, 284 Pa. 410, 413, 414,131 A. 360, 361; Keys, Administratrix, v. Hanscom Bros., Inc., 288 Pa. 389,392, 135 A. 860, 862; Broida v. Travelers Insurance Co.,316 Pa. 444, 447, 175 A. 492, 494; Berardini v. Kay, 326 Pa. 481,486, 192 A. 882, 884; Aliquippa National Bank v. Harvey,Executrix, 340 Pa. 223, 231, 232, 16 A.2d 409, 414.