## Houston's Estate.

Argued April 1, 1935. Before FRAZER, C. J., SIMPSON, KEPHART, MAXEY, DREW and LINN, JJ.

*John A. Metz,* with him *James M. Clark* and *John A. Metz, Jr.,* for appellants.

*David B. Campbell,* with him *Chas. W. Campbell* and *Adolph L. Zeman,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, April 22, 1935:

Upon the audit of the executor's account in the Estate of William B. Houston, deceased, Frances Vactor and Sarah Dempster, who had been household employees in the home of testator, each presented a claim against the estate, and each attempted to prove her claim almost entirely by the testimony of the other. The auditing judge reported in favor of disallowing both claims, the court in banc dismissed the exceptions of the claimants, and entered decrees of disallowance, from which the present appeals have been taken.

For a number of years testator's sister, Lizzie, had been keeping house for him, and the claimants performed their household work under her direction and control. She died March 28, 1925, and each claimant, in practically identical language, said that during the following week, testator came into the kitchen where they were both at work, and said to them: "Girls, I am sorry that Lizzie [the deceased sister] didn't do better by you." He said: "But I am going to do right by you. I want you Frances [Miss Vactor] and Sarah [Miss Dempster] both to stay with me as long as I live. Sarah, I want you to give up all this outside work you are doing [which was done at night, after her day's work for testator was ended] and come into my home and help to take care of me and my

home, and Frances, you are to give up this idea of going away [to study to be a trained nurse]. Sarah . . . I don't want you to do any more outside work. I want you to come in my home and just work for me alone and I'll pay you $15 a week and when I die you are to have the home where you live in—in my will, I'll give you the home that you live in and $6,000 in money besides." And she said: "All right, Mr. Houston I'll do that." And to Miss Vactor he said: "I want you to stay with me the rest of my life, and when I die in my will I'll leave you money enough to live on the balance of your life" and "she said she would stay and work as she had."

Appellants continued in testator's employ until he died some eight years after the conversation was said to have been had. During all that time they were paid their wages, and by his will and codicil testator gave to Miss Dempster the house in which she lived, and to Miss Vactor legacies aggregating $2,000. Miss Dempster therefore claimed $6,000 with interest and Miss Vactor $13,000. This latter sum was reached, it is said, by taking her expectation of life, as shown by the Carlisle Tables, as 28 years—though the record furnished us does not show that they were offered in evidence,—and multiplying it by $20 a week, made up of her wages of $15 per week, plus $5 for her board and her room—though of her condition of health and manner of life no proof appears, —deducting therefrom the $2,000 legacy, and allowing nothing for the fact that the money would be paid in a lump sum instead of in weekly payments, in which event due allowance must always be made in reduction of the lump sum.

The auditing judge decided, and we think correctly, that while each of appellants was, owing to testator's death, an incompetent witness as to her own claim, each was a competent witness as to the claim of the other. He then proceeds: "The probative value of such testimony is, of course, an entirely different matter. A situation like the present opens the door wide to the very thing which

the Act of 1887 was intended to prevent,—the setting up of a contract with a man no longer here to contradict. . . . I have no doubt but that a conversation took place between Mr. Houston and these two claimants, just after the death of his sister,—that he did ask them to stay, promised to pay weekly wages of $15 per week [which he did do] and to provide for them in his will [which also he did]. . . . It is axiomatic that to recover on a verbal agreement for services rendered to a decedent, the proof must be clear, direct and positive, and the terms of the liability must be definite and certain [citing authorities]. . . . The testimony of these two claimants, each for the other, without any corroboration as to details, certainly falls far short of that 'direct and positive' proof required by the cases cited above to establish the estate's liability. . . . One fact brought out in the testimony indicates clearly the attitude of at least one of the claimants towards this estate. Frances Vactor had not been paid her regular $15 per week for about ten weeks [immediately] prior to Mr. Houston's death, since he was not then able to draw the checks. When she submitted her bill to the executors it was at the rate of $35 per week—and her reason was that he had been accustomed to give her more money when he was sick,—as much as $25 per week. The account shows that she was actually paid $295 for this period. *Both of the claims will be refused for the reason that they have not been sufficiently proved."*

This latter statement should end the matter, since this finding of fact by the auditing judge must be given the same effect as the verdict of a jury, especially as he saw the witnesses and their manner of testifying: Eppsteiner v. Isman, 239 Pa. 393; Cruzan v. Cruzan, 243 Pa. 165. Indeed he might have added that their exact accord regarding the language used, after a lapse of eight years, casts grave doubts upon their testimony.

Appellants vainly try to obtain comfort from the following language in the opinion on the exceptions: "Neither could testify for herself on account of the legisla-

tive prohibition, but they could and did trade testimony, each telling the story for the other in almost identical words. I am not saying that those witnesses perjured themselves,—I am saying that such evidence is to be accepted only with great caution, *and in the absence of any corroboration whatever as to the terms of the agreement, the quality of proof demanded by the decided cases has not been supplied.*"

Appellants' counsel contends that if appellants did not perjure themselves they must have told the truth. On the other hand appellee calls attention to the fact that the auditing judge simply says that he is not *saying* they perjured themselves, though he probably thought they had. It is not necessary to accept either of these views. What the court was saying was in maintenance of his earlier statement that the claims were not sufficiently proved. His caution, under the circumstances here appearing, is exactly the view we took in Gongaware's Est., 265 Pa. 512, quoted with approval in Grollman's Est., 273 Pa. 559, 564-5, under similar facts, viz.: "It does not follow, however, because they were competent witnesses the court below was obliged to accept their statements as verity. The opportunity for collusion is always great where two or more people take turn about in testifying for each other, and hence we are not prepared to say the court below clearly erred in refusing to find as facts those conclusions which depended on their tesimony." In the instant case, admittedly neither claim was proved, unless it was by the testimony of the other claimant.

The decree of the court below is affirmed and each appeal is dismissed at the cost of the appellant therein.