## Elverson's Estate

*John J. McDevitt, Jr.,* and *Francis Shunk Brown,* for exceptant.

*Phillip R. Hepburn* and *C. J. Hepburn,* contra.

STEARNE, J., March 20, 1936.—This is a citation against the fiduciary of a deceased trustee for an accounting of the administration of the trust by such de-

ceased trustee. In the estate of such deceased trustee there is a citation for the removal of the fiduciary under section 53 (a) 8 of the Fiduciaries Act of June 7, 1917, P. L. 447, which section pertains to situations where the interests of the estate are apt to be jeopardized by reason of his continuance. Answers and replications were filed in both proceedings, which were, in due course, sent to a master for consideration. The master has filed his reports, to which exceptions have been filed, in which he recommends that the fiduciary be removed but declines to recommend the ordering of an accounting.

James Elverson, the testator, died in 1911, and under the terms of his probated will gave his entire estate to his wife for life and named her as executrix. Upon the death of his wife he gave 2,747 shares of stock in The Philadelphia Inquirer Company to his son, James Elverson, Jr., in trust to pay one half of the income therefrom to himself (the trustee) and the other one half to testator's daughter, Eleanor Louise Patenotre. The trust was to continue until the death of the son, when half of the shares were to be assigned to the son's issue and the remaining half of the shares were to be assigned to the daughter, Mrs. Patenotre. In the event of the death of the son without issue (which occurred), all said shares went to Mrs. Patenotre absolutely. The other provisions of testator's will need not be narrated as they are not involved in the present inquiry. The widow and executrix died in 1923 without filing her account. No account of her administration has ever been filed. An account of an administrator d. b. n. c. t. a. of the estate of the testator was filed in 1930, but such account concerned merely the proceeds of sale of but one of the assets, and did not include an accounting of all of the assets. In the record appears an affidavit of the treasurer of the corporation that the 2,747 shares of stock now in question were transferred to Mrs. Patenotre previous to the appointment of the accounting fiduciary. The petition for distribution stated that "complete settlement had been made by the estate of

the said James Elverson with all other parties in interest". The auditing judge, Lamorelle, P. J., declined to confirm this account, and the record still stands in this situation.

However, there is not the slightest question that James Elverson, Jr., after the death of his mother, the life tenant and executrix, took possession of the 2,747 shares of stock, and entered upon the administration of the trust set up in testator's will. The master finds as a fact in his report pertaining to this estate: "Upon the death of Sallie D. Elverson, James Elverson, Jr., entered upon his duties as trustee under the said eighth clause of the will"; and again in the deceased trustee's estate: "Upon the death of Sallie D. Elverson, the said James Elverson, Jr., did exercise the management and control of The Philadelphia Inquirer Company directed by the will of his father, James Elverson, the senior".

There can be no question that the correct procedure which ought to have been adopted was to have had the personal representative of the deceased executrix file an account of her administration of the estate, and to have had the 2,747 shares of stock awarded to James Elverson, Jr., as trustee under the terms of the trust. However, this was not done. An initial problem of procedure arises: Will a testamentary trustee be required to account for his administration of a trust, where he has acquired possession of the trust res irregularly? We have no doubt about the authority of this court to so do. If statutory authority be required it may be found in section 9(b) of the Orphans' Court Act of June 7, 1917, P. L. 363, which confers jurisdiction over the settlement of accounts of testamentary trustees. See Charles' Estate, 99 Pa. Superior Ct. 51, where a trustee was directed to account, even though he denied the authority of the court in making the appointment. We are therefore unanimously of opinion that because James Elverson, Jr., was the testamentary trustee named in testator's will, and actually took possession of the trust res and adminis-

tered the trust, he was liable to account therefor, irrespective of how irregularly he may have secured the assets.

The trust terminated upon the death of James Elverson, Jr., the trustee, and a duty still remained to transfer the trust assets to the proper distributees. Where the trustee dies, before the completion of his administration, the trustee's executor or administrator is charged with the duty of filing his account. See Accounting in the Orphans' Court by Hon. John Marshall Gest, p. 16; Rickey's Estate, 16 Phila. 244; Bickley's Estate, 13 Dist. R. 461; Graham's Estate, 14 Dist. R. 5, 15 Dist. R. 258, 218 Pa. 344.

It would therefore clearly appear, unless there is something in the case which precludes the petitioner from demanding an accounting, that it was the duty of the respondent, who is the administrator d. b. n. c. t. a. of the estate of the deceased trustee, to file an account of the administration of the trust of such trustee.

Petitioner, an interested person in trust, has the status to demand an accounting. James Elverson, Jr., the trustee (life tenant as to one half of the income from said stock) died January 21, 1929, and left his residuary estate to his widow, Eleanore Mayo Elverson, who in turn died April 8, 1929, and bequeathed her residuary estate to John Green, the petitioner. It would therefore appear that, unless upon the facts reasons are shown to exist which negative his demand for an accounting, such account shall be ordered and audited.

As we understand respondent's resistance against an accounting, it is based upon two objections: (1) That under a construction of the words of the will, and the operation of the decisions concerning apportionment of income and principal, petitioner discloses no right to any part of the trust res; and (2) that the widow of James Elverson, Jr., through whom petitioner derives any rights which he may possess, entered into a family

agreement whereby petitioner is precluded from any alleged participation.

Concerning the first point: The words of the will relating to the income from the stock are: "to pay . . . the other half of the dividends earned thereon, which shall be computed and declared upon the basis of the net earnings". Petitioner alleges that from the death of decedent in 1911 until the trust terminated in 1929 a very large accumulation of earnings existed which were not distributed by the corporation through dividends, and which earnings, reflected in the value of the stock, went to the remainderman, without accounting or judicial determination, by the mere delivery of the stock. Petitioner relies upon a decision of this court: Daily's Estate, 24 D. & C. 628; and a decision of the Supreme Court: Hostetter's Trust, 319 Pa. 572. Respondent maintains that the recited words of the will limit the income from the stock to those dividends which were actually declared and paid, and since no others were actually declared or paid, petitioner, as a matter of law, has disclosed no interest which entitles him to an accounting.

In our view the determination of such questions rests peculiarly within the province of an auditing judge. He should first determine from the evidence whether there were, in fact, accumulations of earnings and how the same were allocated by the corporation. Furthermore, in the facts, he must first construe the will, and then apply the law. This is the usual and orderly method of determining questions of this character. We do not deem it good practice to construe a will, and rule upon its operation, in a preliminary proceeding to require an accounting, especially in a situation where such demanded accounting is the usual and ordinary procedure.

As to the second point, to wit, the family settlement, of course, if the widow and sole beneficiary of James Elverson, Jr., through whom petitioner claims, settled and ended all controversy by an agreement with the remainderman, petitioner would be foreclosed. The scope of any

agreement, either oral or written, will always be judicially construed as to its effect: Bullitt's Estate, 308 Pa. 413. The master specifically found that the delivery of the stock itself to the remainderman was not in conclusion of the rights of the widow and sole beneficiary of the life tenant James Elverson, Jr., to share in accumulated earnings, but upon the contrary that the remainderman recognized her liability to account.

Here again, as we view it, is a question of fact which should be decided by an auditing judge, whose findings have the effect of a verdict by a jury: Houston's Estate, 318 Pa. 300. There is nothing in the testimony, upon this point, which even suggests the impropriety of requiring an accounting.

Respondent further maintains that he should not be required to account because he, as the fiduciary of the deceased trustee, never received any of the assets. But this is no answer to the demand for respondent to account for the deceased trustee's administration and distribution. Furthermore, there possibly could arise questions of surcharge against such fiduciary himself if he actively or negligently allowed assets belonging to the trust estate to pass out of his possession or control.

We are therefore unanimously of opinion that the master erred in not recommending that the respondent be required to account for the administration of the trust of James Elverson, Jr., under the will of James Elverson, deceased.

The master recommends the removal of Herbert E. Blackman, the respondent, as administrator d. b. n. c. t. a. of the estate of James Elverson, Jr., the deceased trustee. No charges of moral turpitude or wrongdoing are made or shown. Such recommendation is based solely upon an existing conflict of interests which he represents.

The fact remains that the trust res, either rightfully or wrongfully, has passed out of the possession and control of the estate of the deceased trustee and his fiduciary.

As pointed out by Judge Henderson in Elverson's Estate, 19 D. & C. 635, 638, the record did not then and does not now reveal a "formal assignment of the stock by anyone having authority so to do". In the event that the petitioner is ultimately successful, in order to recover any amount which is awarded to him, it may very well be that suits will be required to be instituted, not only against the remainderman but against the corporation itself, and, as the corporation has been reorganized, against certain of its stockholders. There may also be a necessity to collect from the respondent himself the amount of any surcharges which an auditing judge may make against him, in the event that it should appear that he was negligent in allowing trust property to pass out of his hands, or in failing to take steps to promptly recover it, or otherwise. We agree with the master that in such circumstances the respondent ought not to be continued as a fiduciary. However, we are of opinion that it would be premature to remove the respondent from his office as fiduciary of the deceased trustee's estate at the present time. Upon an accounting all controverted questions may be submitted to the auditing judge for his adjudication. To such auditing judge should be submitted the master's report concerning his recommendations as to the removal of the fiduciary. If it should ultimately develop that the petitioner does have a just claim, as he alleges, and if the auditing judge is of opinion that because of the fiduciary's conflicting interests he is not qualified to continue to serve as such fiduciary, then and in such case the auditing judge may remove him and arrange to substitute in his place some other duly qualified fiduciary who will act to enforce the orders and decrees of this court.

For the foregoing reasons we have concluded in the Estate of James Elverson, deceased, no. 475, October term, 1916, to sustain exception no. 6 of John Green, the petitioner, and to dismiss all other exceptions pro forma of John Green, the petitioner, and Herbert E.

Blackman, administrator, etc., and we do order and direct Herbert E. Blackman, administrator d. b. n. c. t. a. of the estate of James Elverson, Jr., deceased, forthwith to file an account, in the office of the clerk of this court, of the administration of the trust as administered by James Elverson, Jr., as trustee under the eighth item of the will of James Elverson, deceased, concerning and relating to the 2,747 shares of stock in The Philadelphia Inquirer Company.

In the Estate of James Elverson, Jr., deceased, no. 545, January term, 1930, all of the exceptions to the master's reports filed by both petitioner and respondent are dismissed pro forma, and such reports and record are directed to be submitted to the auditing judge for his appropriate action thereon when the account of James Elverson, Jr., trustee under the eighth clause of the will of James Elverson, deceased, as stated by Herbert E. Blackman, administrator d. b. n. c. t. a. of the estate of James Elverson, Jr., deceased, is presented for audit.

NOTE.—Judge Bok sat, but did not participate in this opinion.