## Kimmey's Estate

*Ulysses S. Koons, Frank J. Strassner, Jr.,* and *Edward J. Kirchner,* for exceptants.

*Sidney E. Smith,* contra.

STEARNE, J., December 4, 1936.—This litigation relates to the ascertainment of the property rights of respective next of kin in the estates of a husband and wife, who, with reciprocal wills, died in a common disaster. The auditing judge, after an extended hearing, analyzed the testimony, and has made a finding of fact that the wife survived the husband. He awarded the husband's estate to the wife's personal representative. The issue, therefore, is whether, under this record, such finding of fact by the auditing judge will be given the effect of a verdict by a jury, or, perhaps better stated, is the evidence of sufficient weight and definiteness as would sustain a verdict by a jury?

It is a well-established principle of law that a finding of fact by an auditing judge will be given the same effect as a verdict by a jury and will not be set aside except upon manifest error: Glenn v. Trees et al., 276 Pa. 165; Himrod v. McFayden, 283 Pa. 103; Miller v. Central Trust & Savings Co. et al., 285 Pa. 472; Boyd's Estate, 315 Pa. 283; Houston's Estate, 318 Pa. 300. Where, however, such finding is based upon inferences or deductions from facts, being the result of reasoning, such rule does not apply: Miller v. Central Trust & Savings Co. et al., supra, p. 476; Gilbraith's Estate, 270 Pa. 288, 289. The reason for such distinction is obvious. In a finding based upon the

determination of the veracity of conflicting witnesses, a hearing judge is in the best situation to determine the true facts. In the latter instance, the court en banc, or the appellate court, has equal advantage with an auditing judge in arriving at the truth.

Approaching a review of the evidence, the pronouncements of the Supreme Court in common-disaster cases must be considered: In Baldus, Admr., v. Jeremias, Admr., 296 Pa. 313, 318, the appellate court reaffirmed the law appearing in an opinion by Mr. Justice Linn, then of the Superior Court, in Sweeney's Estate, 78 Pa. Superior Court 417. Mr. Justice Walling wrote:

". . . in the absence of substantial evidence warranting a definite conclusion as to survivorship of those perishing in a common disaster, they will be treated as dying at the same instant and property rights adjudged accordingly."

And on page 317 he wrote: "Where, as here, two perish in a common disaster there is no presumption as to survivorship. While it may be shown by circumstantial evidence, like any other fact, yet the circumstances must be such as to satisfy reasonably well balanced minds of the existence of the fact sought to be established."

Because, in the case of death in a common disaster, no presumption is held to exist, the burden of proof rests upon those who assert survivorship. The effect of a finding that the wife survived is to transfer the estate from the husband's next of kin to the next of kin of the wife.

The testimony is substantially uncontradicted. Disagreement arises in the deductions drawn from the evidence. As narrated in the adjudication:

"Kimmey and his wife started for Maine on July 22, 1935, and drove 240 miles to Hartford. The following day they drove 228 miles to Martin's Point Bridge, just north of Portland, Me., arriving there about 4:15 in the afternoon. Going north, the road dips down a hill of medium grade and makes about a 30-degree left turn on to the bridge. The weather was warm and the sky was overcast.

The road was paved with concrete. Kimmey was driving. He was going about 25 miles an hour, according to the witness Robertson, but the length of the skid marks, which several witnesses measured and found to be 48 feet, indicates a greater speed. Robertson, going in the opposite direction, was somewhere between 50 and 100 feet away when he saw Kimmey lean over towards his wife, who was riding with him in the front seat. He described this movement in several ways, saying that Kimmey slumped, collapsed, folded up, fell sideways and leaned slightly.

"As a result, Kimmey's car, with brakes locked, ran into an iron paling fence at the point where it met the solid wooden railing of the bridge, carried away a section of both fence and railing and plunged over a 12-foot sheer embankment into five or six feet of water, where it landed upside down."

After the accident, the bodies were removed from the car, and resuscitation was attempted, but without success. The bodies were embalmed, sent to Philadelphia, where, three days after death, autopsies were performed. Of one thing there is reasonable certainty: both victims were dead when they were removed from the water. But even of this there is no positive conclusiveness, because the witness who brought the bodies to the shore testified that, while he "saw no sign of life in either of them", yet he did see the husband's "eyes open and his mouth open up," which may, or may not, have been evidence that a spark of life still existed.

The reasoning upon which the auditing judge based his finding of survivorship of the wife is best summarized in his adjudication:

"In the instant case Kimmey must have died before he was submerged in water or he would have breathed it into his lungs, and the bruise on his chest would have shown an infiltration of blood in the surrounding tissues. It has been shown from the evidence that he could not have sustained the bruise after his car hit the water and that he must have sustained it at or after death. Therefore, death

must have occurred at or before the time his car struck the water. On the other hand, Mrs. Kimmey died of drowning, and hence could not have died until after she was submerged in water. This could not have happened until after the car itself had submerged.

"I therefore find as facts: First, that Kimmey died of a heart attack; second, that Mrs. Kimmey died of drowning; third, that Kimmey predeceased his wife. She, as survivor, accordingly inherited his estate, and her next of kin are entitled to it. The award, however, will be made to her personal representative."

Is there sufficient evidence, beyond the realm of speculation and uncertainty, to sustain this finding of fact? The deduction is based upon the reasoning that the husband "must have died before" the wife, because of absence of water in his lungs, while the wife died after the submergence, because of the water found in hers. Also, the character of the bruise was such as to indicate it was inflicted after death. Therefore, it is assumed that the husband had died before he reached the water, while the wife's death was from drowning.

It seems reasonably clear that the husband was not dead when the car reached the bank over which it plunged. Even though he was seen to "lurch" or "slump" towards the wife, who sat with him on the front seat of the automobile, the brakes were heard to screech and tire marks were definitely pronounced and visible on the road reaching to the very edge of the declivity. The emergency brake was found not to have been set. A dead or unconscious man could not have so applied the foot brakes and kept them so applied. True, the wife could have applied the foot brakes. However, there is not a suggestion of such a fact. Indeed, this seems hardly likely or even possible. Hence we are asked to conclude that the death of the husband probably occurred, from heart disease, in a fraction of a second, to wit, while the car was falling about 12 feet at the known rate of acceleration of 32 feet per second. And it cannot be assumed that death from a heart attack

is always instantaneous. Indeed, this very decedent, on several occasions, suffered from heart attacks, when he remained unconscious from 10 minutes to half an hour.

But it is urged that the conclusions of the auditing judge are irresistible because of three major factors: (1) The meager quantity of water emitted from the body of the man, and the large quantity from the body of the woman, during the attempted resuscitation; (2) the nature and character of the bruise found on the body of the man; (3) the testimony of the eminent physician who performed the autopsies, corroborated by the heart specialist and contradicted by another doctor, that he found no evidence of drowning in the man's body, but ample in that of the woman, with the expression of opinion that the man died first from heart disease and the woman later, from drowning.

It is to be noted that the autopsy occurred three days after the deaths and the embalming of the bodies. Dr. Wadsworth said that the "lungs showed modification by embalming"; that a person may drown in a very small quantity of water; that there is no "trustworthy" time within which it takes for a person to drown; that it may be in "a minute or so"; that a healthy person may drown quicker because he struggles more; that an unconscious person may or may not take in water; that the bruise he found was inflicted "immediately before death or after"; that water could have run out of the body while bringing the body of the husband to shore. His opinion was that decedent had chronic heart disease, that there was no evidence of drowning, and that the man died of heart disease. His final deduction was: "Kimmey probably and in all probability would pass out sooner" (i.e., than his wife). The heart expert, Dr. Williams, expressed his opinion that the husband's "death occurred between the time the car started to skid and when it hit the water". Dr. Haines, upon the contrary, expressed his opinion that both died from drowning; that it would be strange if there were free water in the lungs three days after drowning,

and that "after all the body had been through, it was quite possible that no evidence of water was found."

Taking as true and accurate the expert opinion testimony of claimant's witnesses, it is suggested that the fact of survivorship still remains in the realm of conjecture and uncertainty. Assuming that the husband did die of heart disease, yet with his past history of unconscious spells, and bearing in mind that Dr. Wadsworth said that an unconscious man might not inhale water, it is still quite within the realm of possibility that the wife did drown in a minute or so before the husband actually expired, even though he was submerged in the water. Nor do we regard the color of the victims or facial expressions as particularly important in our inquiry. Dr. Wadsworth testified that he did not regard such matters as positive proof "whether of or against drowning".

No useful purpose would seem to be served by analyzing all the cases in this and other jurisdictions. The facts in the Sweeney case, supra, while relating to a common disaster from gas asphyxiation, were very close to those in the present case. Although the same character of expert opinion testimony was considered, yet this court en banc, sustaining exceptions to an auditing judge's finding of fact as to survivorship, used words, quoted by Judge Linn, which are equally applicable here: "The event furnishes opportunity for subtle debate, but not stable facts on which may rest rights of property."

In the case of Baldus, Admr., v. Jeremias, Admr., supra, the Supreme Court, reversing the decision of the lower court, stated, at page 318: "In the instant case the circumstances are so uncertain as to afford no basis for a conclusion, beyond a possible surmise."

We have carefully read and thoroughly considered all the testimony. We are reluctant to disturb the findings of the auditing judge, who patiently and skillfully tried the case and laboriously considered all the testimony, which he analyzed and discussed with learning and ability. Nevertheless, for the reasons above given, we are of

opinion that his findings cannot be sustained. It is necessary for those who claim title to this estate upon the theory that their ancestor survived decedent to prove their title. That proof must be upon stable facts. We are not permitted to speculate as to the true facts by inference from inference. It is our view that the result reached by the auditing judge was reached through reasoning from proven facts and upon the opinion of expert witnesses, but is entirely too speculative and conjectural to warrant a definite conclusion as to who died first.

Exceptions nos. 22, 23, 25 and 26 of both exceptants are sustained. Such action renders a consideration of the remaining exceptions unnecessary, and these are therefore all dismissed pro forma. The record is recommitted to the auditing judge with directions to ascertain and determine who are the next of kin of this decedent, and to make distribution to them in accordance with the intestate laws of this Commonwealth.