SAMUEL B. BORTEL, JR., SAMUEL POLLOCK AND FRANK P. PRIMIANO, PLAINTIFFS - RESPONDENTS, v. THE BOARD OF EDUCATION OF THE TOWNSHIP OF CHERRY HILL, IN THE COUNTY OF CAMDEN, NEW JERSEY, DEFENDANT, DIVISION OF PENSIONS, DEPARTMENT OF TREASURY, STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 13, 1968—Decided March 11, 1968.

Before Judges CONFORD, COLLESTER and LABRECQUE.

*Mr. Theodore A. Winard,* Deputy Attorney General, argued the cause for appellant, Division of Pensions (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. William B. Hutchinson, Jr.* argued the cause for respondents.

The opinion of the court was delivered by

CONFORD, S. J. A. D.    The Chancery Division held that *N. J. S. A.* 43:3–1 was unconstitutional in its application to the plaintiffs as devoid of a "reasonable basis" to justify its conditioning their right of public employment in this State upon their surrender of accrued pensions for public employment in Pennsylvania. Such pensions were deemed by the court "vested" in plaintiffs under the authority of judicial decisions of the Commonwealth of Pennsylvania.

The facts, background and statute are set forth in the Chancery Division opinion, 95 *N. J. Super.* 289 (1967), to which we refer therefor.

We find ourselves unable to agree with the conclusion of the Chancery Division. The rationale of the court was that, whatever might be the legal characterization of a pension for public employment in New Jersey, see *Spina v. Consolidated Police, etc., Pension Fund Comm.,* 41 *N. J.* 391 (1964) ; *Hozer v. State, etc., Police & Firemen's Pension Fund,* 95 *N. J. Super.* 196 (*App. Div.* 1967), certification denied 50 *N. J.* 285 (1967), the courts of Pennsylvania had construed such pensions upon maturity as vested contractual rights and therefore not constitutionally subject to the

requirement of suspension upon subsequent public employment, pursuant to a Pennsylvania statute similar in effect to *N. J. S. A.* 43:3-1. *Hickey v. Pension Board,* 378 *Pa.* 300, 106 *A. 2d* 233, 52 *A. L. R. 2d* 430 (*Sup. Ct.* 1954). It was deemed that our courts are concluded by that judicial characterization of a pension accrued in Pennsylvania and that the consequent effect of our statute is to condition public employment here upon the "suspension of a constitutionally protected right."

The trial court distinguished *Turner v. Passaic Pension Commission,* 112 *N. J. L.* 476 (*Sup. Ct.* 1932), which sustained the validity of the statute as applied to New Jersey pensioners (at a time when that was the extent of the scope of the act; *L.* 1932, *c.* 259), on the ground that what the Legislature may do in respect of New Jersey pensioners seeking public employment here it may not do with respect to pensioners of another state whose courts take a different view of the nature of a public pension from that of the Legislature and courts of this State—*i.e.,* deem it a vested contractual right.

We think it entirely irrelevant to the issue before us how the Pennsylvania courts characterize pensions provided public employees under the laws of that commonwealth. The New Jersey statute does not compel any Pennsylvania pensioner to surrender his rights. It merely conditions his right to public employment in this State upon his giving up that pension for the period of such employment here. It treats him in exactly the same fashion as it treats New Jersey public pensioners seeking public employment in this State.

██ Plaintiffs do not question that the Legislature may impose reasonable conditions on public employment. Nor do they, nor did the trial court, attack the decision in *Turner v. Passaic Pension Commission, supra,* as erroneous. It is thus established in this State, and we think entirely soundly, that no unconstitutional deprivation is visited upon a New Jersey pensioner who is forbidden by the statute to hold a public position and at the same time enjoy receipt of a

pension arising out of prior New Jersey public employment. The *Turner* decision has been accepted, and has controlled, without challenge for 35 years by legislation or litigation, the status of New Jersey pensioners in the respect here involved. That rule is thus firmly embedded in our public policy. Consequently, the only question presented is whether, as against that background as to the rights and obligations of a New Jersey pensioner in continued public employment, there is anything unreasonable or inadequately grounded in justifiable public policy in our Legislature's subjecting the holder of a public pension from another state seeking public employment here to the same condition to which his fellow-aspirant to New Jersey public employment, the New Jersey pensioner, is validly subject. We think not. The deprivation is of exactly the same nature, substantively considered, regardless of how the pension rights may be variedly characterized by the courts of the two states.

Whether or not we as judges would agree with the public policy of the legislation, as applied to either New Jersey or out-of-state pensioners, is beside the point. Policy-making in this area is not our business. We are satisfied that it was not unreasonable to the point of judicial condemnation that the Legislature should have decided to put both classes of pensioners on the same footing.

The bill by which the statute was extended by amendment to out-of-state pensioners, when enacted as *L.* 1933, *c.* 212, bore the following introducer's Statement:

"The object of this act is as follows: The act was passed in 1932 to prevent people who received pensions and gratuities filling offices and employment in the state to the exclusion of others. This amendment is to provide the same rule with respect to those who are receiving pension from outside of the state. New York and Pennsylvania policemen who have been retired in their respective states, have in some instances come to New Jersey and received appointments. At the present time they have an advantage over New Jersey men, the object of this amendment being to put them in the same position as our own residents."

The problem of maintenance of morale in public employees if one employee were required to forego his accrued pension while his fellow employee was not, is obvious, and the problem would not be mitigated by the fact that the exempted employee's pension accrued from Pennsylvania employment. Moreover, considerations of fairness to New Jersey pensioners competing with the former Pennsylvanians for positions in public employment here, as stressed in the Statement of the 1933 amendment, quoted above, reinforce the reasonableness of the policy decision effected by the legislation under review.

It is commonplace for laws dealing with public employment to lay down reasonable conditions, *e.g.*, that of abstention from other simultaneous occupation in certain categories of public position. Yet an aspirant to such public employment would hardly be heard to contend in such case that he was being deprived of his constitutional right to work (at the other occupation); this because the condition ("deprivation") is a reasonable one in relation to a valid objective of public policy pertaining to the public employment. And so, too, in the case at hand.

The case of *Keyishian v. Board of Regents of University of State of New York*, 385 U. S. 589, 87 S. Ct. 675, 17 L. Ed. 2d 629 (1967), relied upon by plaintiffs, is not authoritative in the present context. There the court held that the surrender of such fundamental rights as freedom of expression and association could not be imposed by a state on an individual as a condition for employment as a teacher. There is obviously no equatable parallel here.

Judgment reversed.