FRANCIS X. BIERNE, PLAINTIFF–APPELLANT, v.
EMPLOYEES' RETIREMENT SYSTEM OF THE CITY
OF JERSEY CITY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 14, 1980—Reargued October 27, 1980.
Decided October 31, 1980.

148

Before Judges ALLCORN, KOLE and PRESSLER.

*Francis P. Morley* argued the cause for appellant.

*Spencer N. Miller* argued the cause for respondent (*Krivit, Miller, Galdieri & Dronzek*, attorneys).

The opinion of the court was delivered by

PRESSLER, J. A. D.

This appeal raises a novel question of interpretation of the pension and retirement act governing the Employees Retirement System of the City of Jersey City (Retirement System), *N.J.S.A.* 43:13–22.1 to 22.65. The issue is whether or not that act or anything in the pension and retirement laws generally prevents a disability retiree who has reached the age of 60 and accumulated 20 years of service and who is then rehired by the city from simultaneously receiving his full retirement pension and the full salary for the new municipal position.

The relevant facts here are largely stipulated. In 1974 plaintiff Francis X. Bierne retired on disability pension from his position as tax collector. Three years later, having by then reached the age of 60 and accumulated in excess of 20 years of service, including the period of disability retirement, he was rehired by Jersey City in the position of Director of Finance at a salary substantially in excess of his disability pension. During the first six months of his employment as Finance Director he received both his salary and his disability pension. At the end of 1977, however, the Retirement System passed a resolution, purportedly pursuant to its general rule–making power accorded it by *N.J.S.A.* 43:13–22.63, providing for the adoption of the following regulation:

> If a former member of the Jersey City Retirement system who has been granted a retirement allowance becomes employed again in a position paying a salary, his retirement allowance shall be cancelled until he again retires.

Thereupon the Retirement System ceased making pension payments to plaintiff. Plaintiff left his second period of employment by the city on January 1, 1979, and it is stipulated that the pension payments thereafter made to him were and continue to be based on his salary at the time of his first retirement. It is further stipulated that during the second period of employment he was not re–enrolled in the Retirement System or included in any other pension and retirement system.

The relief which plaintiff seeks in this action and which was denied him by the trial court is recovery of the pension pay-

ments covering the period from the date of the resolution to the date of the second retirement. It is his position that the applicable statutes permit his simultaneous receipt of both pension and salary and that the resolution pursuant to which the pension payments were terminated was *ultra vires* as inconsistent with contrary statutory provision.

■ Preliminarily, it must be pointed out that prior to its repeal by *L*.1968, *c*. 23, § 2, *N.J.S.A.* 43:3–1 absolutely prohibited a person from simultaneously receiving a salary for a nonelective public employment and a pension under any public pension system. Thus, a re–employed retiree was required to elect either his pension or his salary, and this consequence obtained whether the second public employment was in a position covered by his original retirement system or by a different one. *See Bortel v. Cherry Hill Tp. Bd. of Ed.*, 99 *N.J.Super.* 529 (App.Div. 1967). *N.J.S.A.* 43:3C–1, adopted upon the repeal of the blanket prohibition, provides only that a retiree in receipt of a pension, who thereafter becomes reemployed in a public position covered by a pension fund or retirement system different from the one paying his pension or from which he is eligible to receive such a pension, may not enroll in the pension fund or retirement system covering the new position. In our view, the import of this provision is clearly that such a reemployed pensioner may simultaneously receive both his existing pension and the salary for his new position, but that when he leaves the second employment he will have accrued no pension rights in the new position and will simply continue to receive his original pension.

■ *N.J.S.A.* 43:3C–1, however, does not address the consequences of re–employment in a position covered by the same pension system. Our review of the various pension statutes persuades us that in this situation it was the legislative intention to leave the consequences of such a re–employment, *vis–à–vis* simultaneous receipt of pension and salary and *vis–à–vis* pension system re–enrollment, to be individually determined for each of the various pension systems. Thus, for example, the Public

Employees Retirement System (PERS), *N.J.S.A.* 43:15A–1 *et seq.*, has specific and detailed provisions, both predating and postdating the 1968 repeal of *N.J.S.A.* 43:3–1, defining the consequences of re–employment of a pensioner within the same system. See *N.J.S.A.* 43:15A–44 as to such re–employment of disability pensioners and 43:15A–57.2 as to such re–employment of age and service retirees. See, similarly and respectively, dealing with the Police and Firemen's Retirement System (PFRS), *N.J.S.A.* 43:16A–8 and *N.J.S.A.* 43:16A–15.3. We point out that these prescriptions provide generally, as to both PERS and PFRS, that the consequence of re–employment of a former pensioned member is the cancellation of his pension during his period of re–employment, his re–enrollment into the retirement system and his ultimate retirement benefit computed at least to some degree on the basis of his re–employment salary. The relevance of this observation will appear hereafter.

▪ We consider now the pension and retirement act governing the Employees' Retirement System of the City of Jersey City against the background of this brief historical overview. That act does not, as do the PERS and PFRS acts, address itself at all to the consequences of re–employment in a position encompassed within the same system. The inference we feel constrained to draw therefrom, particularly in view of the repealer of *N.J.S.A.* 43:3–1 and the general permissibility of simultaneous receipt of pension and salary envisioned by *N.J.S.A.* 43:3C–1, is that in the absence of a specific prohibition in the act itself, a rehired Jersey City system member may receive both his pension and his salary whether the new public employment is covered by the Jersey City retirement system or any other public retirement system of this State.

We are further compelled to this result by our view of the interrelationship between *N.J.S.A.* 43:3C–1 and the re–employment provisions aforecited of PERS and PFRS. That is to say, the simultaneous receipt of both pension and salary permitted by *N.J.S.A.* 43:3C–1 is predicated on the fact that a retiree who

is employed within a different retirement system obtains no additional pension or retirement rights attributable to the second employment. Once he leaves that second employment and ceases to receive its salary, his pension and retirement rights are limited to those which flow from his original public employment. In the case of both PERS and PFRS, however, a pensioner who is re–employed within the same retirement system, although he loses his original pension benefits during the period of his second employment, nevertheless receives on termination of that employment an enhanced pension which takes the second period of employment into account. The Jersey City act, however, has no concomitant or analogous provision for re–enrollment of its own rehired pensioners. It bars, moreover, any enrollment in that pension system by a person over the age of 45. See, e. g., *N.J.S.A.* 43:13–22.15. It appears therefore, that in the absence of an express re–enrollment provision and except as otherwise provided by *N.J.S.A.* 43:13–22.55(b) (discussed below), a Jersey City retiree who is rehired by Jersey City is in precisely the same situation as is a retiree to whom *N.J.S.A.* 43:3C–1 is applicable; *i. e.*, a retiree whose second employment is in a position covered by a different pension system. And that situation is simply this—he receives the benefit of his original pension during the period of his second employment as well as his salary but upon termination of the second employment, he reverts back to receipt of the original pension.

We do not agree with the trial court's conclusion that *N.J.S.A.* 43:13–22.55(b) prohibits the simultaneous receipt of pension and salary by this plaintiff although we do agree that it might so prohibit in the case of other Jersey City pensioners. *N.J.S.A.* 43:13–22.55(b), insofar as here applicable, provides that:

A member who is retired on a disability retirement pursuant to this section shall submit himself at times to be selected by the commission but not more often than twice a year, for a physical examination by a physician or physicians designated by the commission; provided, however, that no member retired for disability whose total years of service, including his period of disability retirement, equals 20 or more years and who shall have attained the age 60 shall be required to submit to such physical examination. The physician or physicians

shall report to the commission the physical condition of such member and if said report certifies that the member's condition has improved so that he is no longer permanently disabled or if he is engaged in an occupation, then the amount of his pension shall be reduced to an amount which, when added to the amount of his earnings shall not exceed the salary now attributable to his former position but only after an opportunity is given such member to be represented by counsel at a hearing on the action by the commission.

As we read this section, its prohibitory scope clearly extends only to those disability retirees who are not within the category of persons who have reached the age of 60 and whose total years of service, including the period of disability retirement, equals 20 years or more, that is, persons who would otherwise be eligible for an age and service retirement. See *N.J.S.A.* 43:13–22.53. Disability retirees who are not in that category are required to be periodically examined by a physician, who must report to the Retirement System whether or not the retiree continues to be permanently disabled. If he is either no longer permanently disabled or if he is in fact actually engaged in an occupation, then the amount of the pension is accordingly reduced. *Cf., Indursky v. Bd. of Trustees, Retirem. Sys.*, 137 *N.J.Super.* 335, 339–340 (App.Div.1975). Consequently such a disability pensioner would not be able to simultaneously receive his full pension and salary, whether that salary is earned in public or private employment or whether, if earned in public employment, the new position is one covered by the same or by a different retirement system. If, however, the disability pensioner is within the category of over 60 years of age and over 20 years of service, as is plaintiff here, this statutory provision exempts him from not only the physical examination requirement but also from the potentially adverse consequences of either actual employment or relief from permanent disability. Thus, we are satisfied, such a disability pensioner may receive his full pension as well as his salary from *any* occupation, including one which is covered by the same pension system.

It is our view that the legislative scheme of pension cancellation, re—enrollment and consequent pension enhancement provided by PERS and PFRS for its own rehired retirees is far

preferable as a matter of policy to what we perceive to be the legislative scheme for the Jersey City act. But we are nevertheless constrained to conclude that these are matters properly within the legislative province, and hence adjustable only by the Legislature.

The Retirement System argues finally that even if plaintiff were entitled to simultaneous receipt of pension and salary under the act, its subsequent prohibitory resolution was a proper exercise of its rule–making power and should, therefore, be given full effect as of the date of its passage. We are constrained to disagree. First, it is our view that the resolution is directly contrary to the legislative scheme as we understand it. Furthermore, we are persuaded that the consequences of public employment *vis–à–vis* such matters as simultaneous receipt of pension and salary, pension system enrollment and re–enrollment and enhancement of pension benefits implicate policy questions which are so basic as to be exclusively within the legislative discretion and hence beyond a legitimate exercise of an individual retirement system's rule–making power.

The judgment below is reversed. We remand to the trial court for calculation of plaintiff's pension benefits for the period in question.